IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF DELAWARE

| | |
|---|---|
| PAULA PAGONAKIS )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>EXPRESS, LLC, a/k/a/ )<br>LIMITED BRANDS, INC. )<br>)<br>Defendant. )<br>) | Case No. _____06_____027__<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff Paula Pagonakis ("Plaintiff") brings this action to redress deprivation and interference of rights secured by the Americans With Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12001, et seq. ("ADA") and the Family and Medical Leave Act, 26 U.S.C. § 2601, et seq. ("FMLA")..

## JURISDICTION AND VENUE

1.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1332, 26 U.S.C. § 2617, and 42 U.S.C. §§ 2000e, et seq. and 12001, et seq., for claims arising under the laws of the United States.

2.  Venue is proper in this district since the discriminatory acts and harassment giving rise to the claims occurred in this district. In addition, Defendant is in this District and Plaintiff worked for Defendant in this District.

## THE PARTIES

3.  Plaintiff, Paula Pagonakis, is an individual currently residing at 675 Pewter Court, Apartment 107, Charlottesville, VA 22911. By virtue of the fact that (a) Plaintiff has a physical

and/or mental impairment that substantially limits one or more major life activities, and (b) Plaintiff has a record of such impairment, Plaintiff is an individual with a "disability" as that term is defined under subsections 12102(2)(A) and (B) of the ADA. Plaintiff is also an individual with a disability as that term is defined under subsection 12102(2)(C) of the ADA because, as outlined below, Defendant at all times relevant perceived Plaintiff to have a disability. Plaintiff was also at all times relevant an employee within the meaning of the ADA and FMLA.

4. Defendant, Express LLC, a/k/a/ Limited Brands, Inc. ("Express" or "Defendant"), is a business corporation incorporated in the State of Delaware with a place of business at Space 506, Christiana Mall, 440 Christiana Mall Road, Newark, Delaware 19702.

5. Defendant was, at all times, engaged in a business affecting commerce and had fifty or more employees each working day at all relevant times and is therefore subject to the ADA and the FMLA.

## FACTS

6. As a result of a traumatic brain injury suffered in a car accident on April 12, 1995, Plaintiff has been diagnosed as having Closed Head Injury, Adjustment Disorder with Depressed Mood, Cognitive Disorder, and Fibromyalgia.

7. Plaintiff has persistent visual dysfunction related to her closed head injury. This at time causes her difficulty with reading and causes her to become disoriented, or lose her equilibrium, when exposed to bright or moving lights or other visual stimuli (such as multiple objects moving simultaneously). Plaintiff also has persistent vertigo related to her closed head injury with a tendency toward backward imbalance. As a result of these physical and mental impairments, Plaintiff experiences difficulty processing auditory and written information, is

2

easily distracted, and has trouble organizing her thoughts. Plaintiff also has multiple areas of pain in her neck, back and limbs due to the fibromyalgia.

8. Plaintiff's physical and mental impairments – namely her trouble processing auditory and visual information – severely restrict her ability to perform several major life activities. Plaintiff is substantially limited in her ability to see, hear, read, work and drive as a result of her physical and mental impairments. As noted below, Plaintiff's physical and mental impairments cause(d) Plaintiff to experience difficulty in securing, retaining and advancing in employment.

9. As demonstrated below, Plaintiff was at all time relevant a qualified individual with a disability within the meaning of the ADA because Plaintiff could at all times relevant perform the essential functions of her job with reasonable accommodations.

10. In November 1997, Plaintiff began working for Express as a part-time salesperson in Ohio. At the time of her interview for the part-time salesperson position, Plaintiff informed representatives of Express that she had the physical and mental impairments noted above. Plaintiff provided representatives of Defendant with relevant medical information at the time and requested that Defendant accommodate these physical and mental impairments, by among other things, allowing Plaintiff to work during daylight hours only and working a fairly flexible schedule. Defendant accommodated these disabilities at the time.

11. In June 2000, Plaintiff transferred from Ohio to Newark, Delaware as a part-time salesperson. Plaintiff's personnel file, including the information regarding her disabilities and necessary accommodations, was transferred to the Newark Delaware place of business.

12. Several months after Plaintiff's transfer to Delaware, Kristyn Bosley became the store manager for Defendant's Newark, Delaware store.

13. Because Plaintiff was a top performer and salesperson for Defendant, Ms. Bosley began to assign to assign Plaintiff additional tasks that were more akin to those performed by managerial employees.

14. Thereafter, in March 2002, Plaintiff's District Manager, Ana Klancik, promoted Plaintiff to the position of Brand Sales Leader (essentially a manager in training position). This position was a full-time position. Express continued to accommodate Plaintiff's disabilities at that time and worked with Plaintiff to ensure that Plaintiff could complete the essential functions of her job with the appropriate accommodations. These accommodations included, but were not limited to the following: (a) daylight work hours; (b) well lit work area; (c) no climbing; (d) no wet work place; (e) intermittent days off every three to four days; and (f) frequent breaks during the work day.

15. As part of her new position as Brand Sales Leader, Plaintiff would occasionally perform tasks related to her job at the Newark, Delaware store that Ms. Bosley managed. On many of these occasions, Ms. Bosley made offhanded comments to other store personnel about Plaintiff's disabilities and about her view that Plaintiff was not management material because of her inability to work regular hours. Elise O'Neal, an assistant manager at the same store, made similar comments to other staff and store personnel.

16. Between March 2002 and June 2003, Plaintiff complained about this disparate treatment to her District Manager, Ana Klancik, on many occasions. In response, Ms. Klacik instructed Plaintiff to "just go along with it," "not ruffle feathers," and "try to find a way to avoid [the other managerial employees] making the comments." On information and belief, Ms. Klacik did not attempt to stop the disparate and harassing treatment of which Plaintiff complained.

17. Plaintiff later was promoted to co-manager position in June 2003 and received a pay increase. At the time of her promotion, Plaintiff provided additional information to Ms. Klacik about her physical and mental impairments so that Ms. Klacik would fully understand Plaintiff's physical and mental limitations and so that Ms. Klacik could make sure that Plaintiff could effectively perform the essential functions of this new position.

18. Between August 2003 and November 2003, Ms. Bosley and Ms. O'Neil continued to treat Plaintiff in a disparate and harassing manner. Plaintiff continued to complain about this treatment to, and request assistance from, Ms. Klacik. Ms. Klacik never took steps to assist Plaintiff in this regard.

19. On or around November 18, 2003, Plaintiff's Ms. Klacik stopped returning Plaintiff's phone calls and cut off her communication with Plaintiff.

20. On or around November 18, 2003, Ms. Bosley told Plaintiff that Plaintiff would be required, among other things, to change her schedule and work some hours on a few evenings. Plaintiff expressed her concern to Ms. Bosley that this new schedule would no longer accommodate her inability to drive to work in the evening and work only during daylight hours. Ms. Bosley also told Plaintiff at this time that Plaintiff would have to do more work at Defendant's Newark store, and that Plaintiff would not be able to work from home as much – further limiting Plaintiff's ability to effectively perform the essential functions of her position.

21. At or around this same time, Defendant started changed its managerial meetings from mornings to evenings, effectively preventing Plaintiff from being able to participate in the meetings due to her inability to work or drive at night.

22. At or around this time, Defendant would require Plaintiff to work from 8:00 a.m. until 4:00 p.m. with no breaks. Ms. Bosley refused to allow Plaintiff to take breaks, stating that

Plaintiff did not need breaks because Plaintiff wasn't working a full nine hours. Ms. Bosley did, however, allow other employees to take breaks.

23.  At or around the same time, Defendant required Plaintiff to work six days a week without a day off.

24.  On November 25, 2003, Plaintiff was informed by Tara Kessler, a Regional Human Resources Generalist for Express that Defendant would no longer be able to provide Plaintiff with reasonable accommodations for her disabilities because: (a) Defendant has lost Plaintiff's personnel file, so there was no longer any validation of Plaintiff's disabilities or need for accommodations on file with Defendant; and (b) the individual that had previously authorized the accommodations allegedly did not have authority to do so.

25.  During their November 25, 2003 meeting, Ms. Kessler asked Plaintiff if she had ever presented doctor's reports to verify her disabilities. Plaintiff answered in the affirmative and promptly offered to submit these records to Ms. Kessler, who refused to accept them. Ms. Kessler then directed Plaintiff to contact Defendant's Human Resources Department within twenty-four hours to let them know of her need for accommodations, and to submit the necessary documentation to this Department.

26.  Plaintiff then contacted the Human Resources Department and Defendant's Corporate Department, as directed by Ms. Kessler, to determine to whom she needed to provide the relevant medical documentation of her physical and mental impairments. Despite Plaintiff's best efforts, Defendant never accepted the information Plaintiff sought to submit, and continued to fail to reasonably accommodate Plaintiff's impairments.

27. Due to Defendant's failure to reasonably accommodate her impairments, Plaintiff suffered from extreme fatigue, exhaustion and stress and was forced to take Family Medical Leave on December 9, 2003.

28. Plaintiff's physicians cleared her to return to work approximately two weeks later. Upon returning to work on December 23, 2003, Plaintiff provided Defendant with yet another letter from her treating physician that indicated that Plaintiff needed the following accommodations with her job: (a) daylight work hours; (b) well lit work area; (c) no climbing; (d) no wet work place; (e) periodic breaks as provided by law; and (f) intermittent days off every three to four days. The letter also stated that representatives of Defendant should feel free to contact Plaintiff's treating physician should Defendant have any additional questions.

29. Upon Plaintiff's return to work on December 23, 2003, she faced harassment from her co-workers and supervisors. Additionally, Defendant failed to assist Plaintiff in getting her medical information to the right individuals so as to provide the necessary proof of need for an accommodation. As a result of Defendant's actions and inactions noted above, Plaintiff's disabilities generally were no longer accommodated by Defendant and Plaintiff suffered extreme physical and emotional distress.

30. As a result of the continuing harassment and failure to reasonably accommodate, Plaintiff was forced to take additional Family and Medical Leave on February 3, 2004.

31. Due to Plaintiff's extreme physical and mental fatigue and distress – resulting from Defendant's harassment and failure to accommodate – Plaintiff's physicians extended her leave of absence on February 17, 2004.

32. Because Plaintiff could no longer tolerate the severe and pervasive harassment and disparate treatment she faced on account of her disability, and because she could no longer

tolerate working for Defendant without the necessary accommodations, Plaintiff resigned from her position with Defendant on March 18, 2004.

33. As of March 18, 2004, Defendant still had not accepted Plaintiff's medical documentation of her disabilities, still had not located Plaintiff's personnel file, and still had not made efforts to reasonably accommodate Plaintiff's disabilities.

34. Plaintiff performed her duties satisfactorily throughout her employment.

## ADMINISTRATIVE PREREQUISITES TO SUIT

35. On or about January 30, 2004, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) alleging unlawful discrimination based on disability.

36. On October 5, 2005, the EEOC issued Plaintiff a notice of right to sue with regard to the charges of discrimination. Because the EEOC mailed the right to sue letter to Plaintiff's former address in Delaware, and not Plaintiff's correct address in Charlottesville, Virginia, Plaintiff did not receive the letter, and was not otherwise aware of her right to sue, until October 17, 2005. This action, therefore, is brought within ninety (90) days if Plaintiff's receipt of the right to sue letter.

37. Plaintiff has satisfied all required conditions precedent to this action.

## COUNT I

## DISCRIMINATION UNDER THE ADA

38. Plaintiff incorporates paragraphs 1 through 37 herein by reference as if fully set forth at length.

39. By its actions above, Defendant intentionally discriminated against Plaintiff in violation of Section 12112 of the ADA by, among other things, not making reasonable

accommodations to the known physical or mental limitations of Plaintiff, an otherwise qualified individual with a disability who was an employee of Defendant

40.     Defendant's conduct has been intentional, deliberate, willful, and conducted in callous disregard of the rights of Plaintiff.

41.     As a direct and proximate result of said intentional acts, Plaintiff has suffered loss of employment, physical and emotional damage and suffering, loss of income, loss of other employment benefits, and has suffered and continues to suffer emotional distress, humiliation, great expense, and embarrassment and physical and emotional damage.

WHEREFORE, Plaintiff requests legal and equitable relief including:

   a.  a declaration that defendant's conduct toward her was unlawful;
   b.  back pay with interest;
   c.  front pay;
   d.  compensatory damages in an amount in excess of $150,000;
   e.  punitive damages;
   f.  attorneys' fees and costs.

### COUNT II

### VIOLATION OF THE ADA - RETALIATION

42.     Plaintiff incorporates paragraphs 1 through 41 herein by reference as if fully set forth at length.

43.     Plaintiff's request for reasonable accommodations and complaints to supervisors about the harassing and disparate treatment she received from managerial employees of Defendant on account of her disability is protected activity within the meaning of the ADA.

9

44. Defendant's failure to accommodate Plaintiff after she complained of the harassment and disparate treatment she faced at work is a violation of subsection 12203(a) of the ADA, which prohibits any person or entity from discriminating against any individual because such individual has opposed any act or practice made unlawful by this the ADA.

45. Defendant's actions were outrageous, willful, wanton, and undertaken with reckless disregard and indifference to the rights of Plaintiff.

WHEREFORE, Plaintiff requests legal and equitable relief including:

    a. a declaration that Defendant's conduct toward her was unlawful;

    b. back pay with interest;

    c. reinstatement to the position she would have enjoyed if not for defendant's unlawful action or, in lieu thereof, front pay;

    d. compensatory damages in an amount in excess of $150,000;

    e. punitive damages;

    f. attorneys' fees and costs.

## COUNT III

### VIOLATION OF THE FMLA - RETALIATION

46. Plaintiff incorporates paragraphs 1 through 45 herein by reference as if fully set forth at length.

47. Defendant's failure to accommodate Plaintiff's disabilities after she returned from disability leave constituted unlawful discrimination and retaliation in violation of the FMLA, 29 U.S.C. § 2601 *et seq.*

48. Defendant's actions were outrageous, willful, wanton, and undertaken with reckless disregard and indifference to the rights of Plaintiff.

WHEREFORE, Plaintiff requests legal and equitable relief including:

    a.    a declaration that Defendant's conduct toward her was unlawful;

    b.    back pay with interest;

    c.    reinstatement to the position she would have enjoyed if not for defendant's unlawful action or, in lieu thereof, front pay;

    d.    compensatory damages in an amount in excess of $150,000;

    e.    punitive damages;

    f.    attorneys' fees and costs.

Dated: January 13, 2006

Respectfully submitted,

*[signature]*

Gary W. Aber
Aber, Golust, Baker & Over
702 King Street
P.O. Box 1675
Wilmington, DE 19899
Tel: (866) 826-4950
Fax: (302) 472-4920
gaber@gablawde.com

**Of counsel:**

James C. Bailey
Jason H. Ehrenberg
BAILEY & EHRENBERG PLLC
1155 Connecticut Avenue NW
Suite 1100
Washington, D.C. 20036
Tel: (202) 787-3869
Fax: (202) 318-7071
jcb@becounsel.com