**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| PAULA PAGONAKIS | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 06-027 (GMS) |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| EXPRESS, LLC, a/k/a/ | ) | |
| LIMITED BRANDS, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S REQUESTS FOR ADMISSION**

Plaintiff Paula Pagonakis ("Plaintiff"), through her attorneys and pursuant to Federal Rule of Civil Procedure 36, hereby requests that Defendant Express LLC a/k/a Limited Brands, Inc. ("Defendant"), admit the matters set forth in the following Requests for Admission within thirty (30) days of the date of service hereof.

Each matter set forth as a Request for Admission shall be deemed admitted unless Defendant serves an answer or objection signed by Defendant or its attorney, upon Plaintiff in accordance with the Federal Rules of Civil Procedure.

**DEFINITIONS AND INSTRUCTIONS**

1. "You" and "your" refers to Defendant Express LLC a/k/a Limited Brands and/or any agents or representatives action on your behalf.

2. You must set forth either an answer or an objection to each Request for Admission. If you object to a Request, you must state the reason for your objection. You may not object to any request solely on the ground that the matter presents a genuine issue for trial.

    3.      "This action" refers to *Pagonakis v. Express LLC a/k/a Limited, Inc.* pending before the United States District Court for the District of Delaware, (Civil Action 06-027 (GMS)).

    4.      In your answer, you must either admit or deny the matter set forth in the requested admission. If you deny a matter set forth in one of these Requests, your denial must fairly meet the substance of the requested admission. If you cannot truthfully admit or deny the matter, your answer must set forth in detail the reasons why you cannot do so. You may not give lack of information or knowledge as a reason for your failure to admit or deny, unless you have conducted a reasonable inquiry into all information readily available to or obtainable by you and that information is insufficient to enable you to admit or deny the matter.

## PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION

1.    Plaintiff has a physical and/or mental impairment that substantially limits one or more major life activities.

2.    Plaintiff is an individual with a "disability" as that term is defined under subsections 12102(2)(A) and (B) of the ADA.

3.    Plaintiff is also an individual with a disability as that term is defined under subsection 12102(2)(C) of the ADA because Defendant at all times relevant perceived Plaintiff to have a disability.

4.    While employed by Defendant, Plaintiff was an "employee" of Defendant within the meaning of the ADA and FMLA.

5. Defendant is a business corporation incorporated in the State of Delaware with a place of business at Space 506, Christiana Mall, 440 Christiana Mall Road, Newark, Delaware 19702.

6. Defendant was, at all times, engaged in a business affecting commerce and had fifty or more employees each working day at all relevant times and is therefore subject to the ADA and the FMLA.

7. As a result of a traumatic brain injury suffered in a car accident on April 12, 1995, Plaintiff has been diagnosed as having Closed Head Injury, Adjustment Disorder with Depressed Mood, Cognitive Disorder, and Fibromyalgia.

8. Plaintiff has persistent visual dysfunction related to her closed head injury.

9. Plaintiff has persistent vertigo related to her closed head injury with a tendency toward backward imbalance.

10. As a result of her physical and mental impairments, Plaintiff experiences difficulty processing auditory and written information, is easily distracted, and has trouble organizing her thoughts.

11. Plaintiff has multiple areas of pain in her neck, back and limbs due to her fibromyalgia.

12. Plaintiff's physical and mental impairments – namely her trouble processing auditory and visual information – severely restrict her ability to perform several major life activities.

13. Plaintiff is substantially limited in her ability to see, hear, read, work and drive as a result of her physical and mental impairments.

14. When she was employed by Defendant, Plaintiff was a qualified individual with a disability within the meaning of the ADA because Plaintiff could at all times relevant perform the essential functions of her job with reasonable accommodations.

15. In November 1997, Plaintiff began working for Defendant as a part-time salesperson in Ohio.

16. At the time of her interview for the part-time salesperson position with Defendant, Plaintiff informed representatives of Defendant that she had the physical and mental impairments noted above.

17. At the time of her interview with Defendant, Plaintiff provided representatives of Defendant with relevant medical information and requested that Defendant accommodate her physical and mental impairments. These accommodations included, but were not limited to the following: (a) daylight work hours; (b) well lit work area; (c) no climbing; (d) no wet work place; (e) intermittent days off every three to four days; and (f) frequent breaks during the work day.

18. In June 2000, Plaintiff transferred from Ohio to Newark, Delaware as a part-time salesperson for Defendant.

19. At the time of her transfer from Ohio to Delaware, Plaintiff's personnel file, including the information regarding her disabilities and necessary accommodations, was transferred to the Newark, Delaware place of business.

20. Several months after Plaintiff's transfer to Delaware, Kristyn Bosley became the store manager for Defendant's Newark, Delaware store.

21. On November 25, 2003, Plaintiff was informed by Tara Kessler, a Regional Human Resources Generalist for Defendant, that Defendant would no longer be able to provide Plaintiff with reasonable accommodations for her disabilities

22. On November 25, 2003, Plaintiff was informed by Ms. Kessler that Defendant had lost Plaintiff's personnel file, so there was no longer any validation of Plaintiff's disabilities or need for accommodations on file with Defendant.

23. On November 25, 2003, Plaintiff was informed by Ms. Kessler that the individual that had previously authorized Plaintiff's accommodations in the workplace did not have authority to so authorize the accommodations.

24. During their November 25, 2003 meeting, Ms. Kessler asked Plaintiff if she had ever presented doctor's reports to verify her disabilities. Plaintiff answered in the affirmative and promptly offered to submit these records to Ms. Kessler, who refused to accept them.

25. During their November 25, 2003 meeting, Ms. Kessler directed Plaintiff to contact Defendant's Human Resources Department within twenty-four hours to let them know of her need for accommodations, and to submit the necessary documentation to this Department.

26. On or around November 26, 2003, Plaintiff contacted Defendant's Human Resources Department and Defendant's Corporate Department, as directed by Ms. Kessler, to determine to whom she needed to provide the relevant medical documentation of her physical and mental impairments.

27. Despite Plaintiff's best efforts, Defendant never accepted the information Plaintiff sought to submit, and continued to fail to reasonable accommodate Plaintiff's impairments.

28. Due to Defendant's failure to reasonably accommodate her impairments, Plaintiff suffered from extreme fatigue, exhaustion and stress and was forced to take Family Medical Leave on December 9, 2003.

29. Plaintiff's physicians cleared her to return to work approximately two weeks later. Upon returning to work on December 23, 2003, Plaintiff provided Defendant with yet another letter from her treating physician that indicated that Plaintiff needed the following accommodations with her job: (a) daylight work hours; (b) well lit work area; (c) no climbing; (d) no wet work place; (e) periodic breaks as provided by law; and (f) intermittent days off every three to four days. The letter also stated that representatives of Defendant should feel free to contact Plaintiff's treating physician should Defendant have any additional questions.

30. Upon Plaintiff's return to work on December 23, 2003, Defendant failed to assist Plaintiff in getting her medical information to the right individuals so as to provide the necessary proof of need for an accommodation.

31. As of March 18, 2004, Defendant still had not accepted Plaintiff's medical documentation of her disabilities.

32. As of March 18, 2004, Defendant still had not located Plaintiff's personnel file.

33. Plaintiff performed her duties satisfactorily throughout her employment.

34. On or about January 30, 2004, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) alleging unlawful discrimination based on disability.

35. On October 5, 2005, the EEOC issued Plaintiff a notice of right to sue with regard to the charges of discrimination.

36. The EEOC mailed the right to sue letter to Plaintiff's former address in Delaware, and not Plaintiff's correct address in Charlottesville, Virginia

37. Plaintiff did not receive her right to sue the letter October 17, 2005.

38. Plaintiff's action was brought within ninety (90) days of Plaintiff's receipt of the right to sue letter.

39. Plaintiff has satisfied all required conditions precedent to this action.

40. Prior to the termination of her employment with Defendant, Plaintiff provided Defendant with a letter from her physician, Dr. Badillo, dated December 23, 2003, that stated that Plaintiff needed the following accommodations with her job: (a) daylight work hours; (b) well lit work area; (c) no climbing; (d) no wet work place; (e) periodic breaks as provided by law; (f) intermittent days off every three to four days.

41. The document Defendant produced to Plaintiff in this litigation marked "Express-PAG000010" is a true and correct copy of the letter referenced in Request for Admission No. 40.

42. The document Defendant produced to Plaintiff in this litigation marked "Express-PAG000012" states that, due to a motor vehicle accident in 1995, Plaintiff has "long-term permanent restrictions" and Plaintiff: (a) cannot drive at night and must work daylight hours; (b) must have quiet time for projects that involve thought; (c) must take breaks as needed as dictated by law; (d) must be able to take lunch breaks; (e) cannot o into dark places or climb ladders.

43. Prior to the termination of her employment with Defendant, Plaintiff provided Defendant's Human Resources Department with a note from Dr. Badillo dated December 18, 2003 that stated that Plaintiff "needs previous accommodations."

44. The document Defendant produced to Plaintiff in this litigation marked "Express-PAG000013" is a true and correct copy of the note referenced in Request for Admission No. 43.

45. On December 10, 2003, Total Care Physicians, P.A. provided Defendant with a note from Dr. Badillo, dated December 10, 2003, stating that Plaintiff needed certain accommodations.

46. Jennifer Hinkle, an employee of Defendant, notified Plaintiff by e-mail dated December 29, 2003, that Defendant had received a copy of Plaintiff's "restrictions" and that "it is now up to Ana and your Store Manager to determine if they can make the accommodations outlined by your doctor."

47. The document Defendant produced to Plaintiff in this litigation marked "Express-PAG000039" is a true and correct copy of an e-mail from Jennifer Hinkle to Plaintiff dated December 29, 2003.

48. By e-mail dated December 29, 2003, Ana Klancic asked Jennifer Hinkle whether Ms. Klancic had to accommodate Plaintiff's disability.

49. The document Defendant produced to Plaintiff in this litigation marked "Express-PAG000040" contains a true and correct copy of an e-mail from Ana Klancic to Jennifer Hinkle dated December 29, 2003.

50. By e-mail dated December 29, 2003, Jennifer Hinkle stated to Ana Klancic that Defendant may have no choice but to accommodate Plaintiff's disability "because she has been working only day hours for years and years" and "it would be hard for us to now say that we couldn't accommodate her in this area."

51. The document Defendant produced to Plaintiff in this litigation marked "Express-PAG000041" contains true and correct copy of an e-mail from Jennifer Hinkle to Ana Klancic dated December 29, 2003.

Dated: November 1, 2006	Respectfully submitted,


  /s/ Gary W. Aber
Gary W. Aber
Aber, Golust, Baker & Over
702 King Street
P.O. Box 1675
Wilmington, DE 19899
Tel: (866) 826-4950
Fax: (302) 472-4920
gaber@gablawde.com

**Of counsel:**

James B. Bailey
Jason H. Ehrenberg
BAILEY & EHRENBERG PLLC
1155 Connecticut Avenue NW
Suite 1100
Washington, D.C. 20036
Tel: (202) 787-3869
Fax: (202) 318-7071
jcb@becounsel.com

9