IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PAULA PAGONAKIS, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No.: 06-027 (SLR) |
| ) | |
| EXPRESS, LLC, a/k/a ) | |
| LIMITED BRANDS, INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
EXPRESS, LLC'S MOTION FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

Plaintiff Paula Pagonakis ("Plaintiff"), a former employee of Defendant Express, LLC ("Express"), asserts claims under the Family Medical Leave Act (the "FMLA") and the Americans with Disabilities Act (the "ADA"). Both claims fail as a matter of law.

Plaintiff voluntarily resigned from her employment with Express. At the time of her resignation, Plaintiff held a full-time, Co-Manager position. The essential functions of this position, in relevant part, require full-time hours, the ability to regularly open and close the store, and regular attendance.

This lawsuit arises out of Plaintiff's accommodation request which sought to drastically alter the essential functions of the Co-Manager position. Specifically, Plaintiff alleges that she is unable to drive at dusk, dawn, or night. In addition, Plaintiff alleges that she cannot drive if the weather is rainy, snowy or foggy. Plaintiff essentially sought a schedule with Express which permitted her to work a sporadic and day-only schedule.

When Express' Human Resources department learned of this requested accommodation, the good faith interactive process required by the ADA ensued. Although not legally required to

provide such accommodations, Express ultimately agreed to provide all of the accommodations sought by Plaintiff in December 2003. During the three months after this decision, Plaintiff never complained to anyone at Express. Rather, Plaintiff simply resigned without explanation in March 2004.

As set forth below, Plaintiff's ADA and FMLA claims are legally and factually flawed.[1] Accordingly, summary judgment should be entered in favor of Express on all claims asserted and this matter should be terminated.

## II.     STATEMENT OF RELEVANT FACTS

### A.     General Background.

Express is a national specialty retailer selling men's and women's fashions and accessories. See Declaration of Jennifer Hinkle at ¶ 3 (hereinafter, "Decl. Hinkle at __") (attached hereto as Exhibit A). Each Express store is typically managed by a Store Manager, who is assisted by one or more Co-Managers. Decl. Hinkle at ¶ 3. Both the Store Manager and Co-Manager positions are full-time positions and are paid on a salary basis. Decl. Hinkle at ¶ 3. Express stores are organized geographically into districts, each district being led by a District Manager. Decl. Hinkle at ¶ 3.

Plaintiff began her employment in 1999. Deposition of Plaintiff at 97 (hereinafter, "Plaintiff Dep.") (the relevant pages cited herein are attached as Exhibit B). Plaintiff later transferred, at her request, to an Express store located in the Christiana Mall, Newark, Delaware. Plaintiff's Dep. at 14; Compl. ¶ 14. During her tenure at the Christiana Mall store, Plaintiff was promoted by store management on multiple occasions. Plaintiff's Dep. at 94. Plaintiff

---

[1] Express filed a second motion for summary judgment which addresses the procedural flaws in Plaintiff's ADA claim. Both motions are equally dispositive of this claim.

voluntarily resigned from her employment on March 18, 2004. Plaintiff's Dep. at 31-32 and 88; Ex. 4.

**B.      Express' Employment Policies.**

Plaintiff concedes that she understood that Express' policies prohibit all forms of discrimination. Plaintiff's Dep. at 183. In addition, Plaintiff understood that Express' policies provide for FMLA leaves and reasonable accommodations for disabilities. Plaintiff's Dep. at 183-184. Finally, Plaintiff understood that Express had an open door policy and complaint procedures, including an ethics hotline, which permit employees to notify Express' human resources of any issues in the stores. Plaintiff's Dep. at 184.

Plaintiff never complained of any alleged harassment or discrimination through Express' complaint procedures. Plaintiff's Continued Deposition at 47-50 (hereinafter "Plaintiff's Cont. Dep.") (all cited pages are attached hereto as Exhibit C); Declaration of Rosie Rock at ¶ 4 (hereinafter, "Decl. Rock") (attached as Exhibit D); Deposition of Ana Klancic at 46-48, 122 (hereinafter, "Klancic Dep.") (the relevant pages cited herein are attached as Exhibit E); Deposition of Elise Zapp at 17 (hereinafter, "Zapp Dep.") (the relevant pages cited herein are attached as Exhibit F).

**C.      Plaintiff's Alleged Disability And Requested Accommodations.**

In 1995, prior to her employment with Express, Plaintiff was in a car accident. Plaintiff's Dep. at 7. Throughout her employment with Express, Plaintiff alleged that she required several accommodations due to complications arising from the car accident. Compl. ¶ 10. However, despite both formal and informal requests for information, Plaintiff never notified Express of any

3

physical or mental impairment which necessitated her accommodation requests.[2] Klancic Dep. at 90, 96; Decl. Hinkle at ¶ 14.

Plaintiff's supervisors only knew that she claimed to be unable to work at dusk, dawn or night and to drive in snow, rain or fog because "she lost direction." Klancic Dep. at 68-9. The specific accommodations that Plaintiff requested were as follows: (1) daylight work hours; (2) well lit work area; (3) no climbing; (4) no wet workplace; (5) periodic breaks as required by law; and (6) intermittent days off every 3-4 days. Plaintiff's Dep. at Ex. 3.

### D.  Plaintiff Concedes That All Accommodations Were Provided Until November 2003.

Plaintiff concedes that Express accommodated her workplace restrictions from the beginning of her employment until November 2003. Plaintiff's Dep. at 108-109; Klancic Dep. at 59-61. During this time period, Plaintiff acknowledges that she had the ability to modify her schedule without giving the store any prior notice. Plaintiff's Dep. at 104-05; Plaintiff's Cont. Dep. at 40; Klancic Dep. at 57, 63, 94-95, 99-100.

Prior to June, 2003, Plaintiff was an hourly employee and the accommodations were provided without the need for medical documentation by store management. Klancic Dep. at 59-60, 68. In June, 2003, Plaintiff was promoted to the full-time, Co-Manager position. Plaintiff's Dep. at 94. In this position, due to the essential functions of a Co-Manager position, Plaintiff's requested accommodations became an issue. Klancic Dep. at 59-60, 66-7.

### E.  Plaintiff's Requested Accommodations Modified The Essential Functions Of The Co-Manager Position.

The essential functions of the Co-Manager position are not in dispute. A Co-Manager is expected to work a consistent forty-hour a week schedule in the store, be able to open and close

---

[2] In this lawsuit, Plaintiff claims that as a result of her car accident she suffers from a traumatic brain injury, inner ear damage, and functional vision problems. Plaintiff's Dep. at 11.

the store on a regular basis, and have regular attendance. Decl. Hinkle ¶ 4,5; Klancic Dep. at 25-30, 102. A Co-Manager is required to be present in the store – not work from home. Decl. Hinkle at ¶ 5.

Each store is given a weekly allocation of hours to use for scheduling, based on the store's volume. Klancic Dep. at 24-26. Because Store Managers and Co-Managers are paid a full-time salary, or for forty hours a week, the store is charged at least forty hours for each Store Manager and Co-Manager, regardless of the number of hours worked. Klancic Dep. at 24-26. As a result, it is imperative that the management team be able to work forty hours a week on a consistent basis so that the store can operate within its budget. Klancic Dep. at 24-26. Store schedules are posted in advance so that any scheduling conflicts or modifications can be accommodated ahead of time to keep the store within its budgeted hours. Klancic Dep. at 29-30

Express stores are generally open to the public from 10 a.m. until 9 p.m. Klancic Dep. at 27-29. However, because there are tasks that must be completed before and after the store is opened to the public, an opening shift at Express typically begins around 8 a.m. and a closing shift typically ends about 11 p.m. – typically before and after daylight hours Klancic Dep. 27-29.

It is undisputed that that Plaintiff's requested accommodations did not allow her to perform the essential functions of the Co-Manager position: (1) Plaintiff was unable to open or close the store on a regular basis (Klancic Dep. at 95), (2) Plaintiff's District Manager, Ana Klancic, acknowledged that Plaintiff was unable to work forty hours a week in the store (Klancic Dep. at 62, 101-2), (3) Plaintiff worked from home when she claimed she was unable to commute to work due to weather conditions (Klancic Dep. at 62), (4) Plaintiff admits that there were days that she reported to work late and left early due to the weather (Plaintiff's Cont. Dep.

at 36, 38 39; Klancic Dep. 63, 94-5, 99-100), and (5) Plaintiff acknowledges that she did not have regular attendance as her schedule changed daily; regardless of what hours she was scheduled to work, she "c[a]me in when she could get in." (Plaintiff's Cont. Dep. at 38-9; Plaintiff's Dep. at 104-5). Accordingly, Plaintiff's requested accommodations resulted in a truly flexible, discretionary work schedule. Plaintiff's Dep. at 104-106; Klancic Dep. 63, 94-5, 99-100. This, in turn, resulted in her co-workers working longer and/or more often. Klancic Dep. at 97, 99-102

Nonetheless, from June 2003 until November 2003, Plaintiff's District Manager, Ana Klancic, accommodated Plaintiff without requesting medical documentation or getting approval from Express' Human Resources department. Klancic Dep. at 65.

### F. Express Requests Medical Documentation From Plaintiff.

In November 2003, Plaintiff's District Manager was informed that Express did not permit special scheduling requests, absent medical documentation to support the request. Klancic Dep. at 100. Consequently, on or about November, 25, 2003, Ms. Klancic and a member of the Human Resources team met with Plaintiff and requested that she provide medical records to HR Direct to substantiate her need for her requested accommodations. Plaintiff's Dep. at 131-132.

Shortly following this meeting, on December 8, 2003, Plaintiff requested, and was granted, an FMLA leave. Plaintiff's Dep. at 81-82, Ex. 1. On December 23, 2003, Plaintiff's physician provided medical records consisting of an one-page list of requested accommodations for Plaintiff. Plaintiff's Dep. at Ex. 3. That "medical record" merely verified that Plaintiff was under a physician's care and requested the six accommodations, as set forth above, that Express had previously been providing to Plaintiff. Decl. Hinkle at ¶ 12; Plaintiff's Dep. at Ex. 3.

The requested accommodations were forwarded to Ms. Klancic and to Jennifer Hinkle, a Human Resources manager for Express. Decl. Hinkle at ¶ 13. Ms. Klancic and Ms. Hinkle conferred regarding whether the store could accommodate Plaintiff's requested accommodations. Klancic Dep. at Ex. 5. Although Plaintiff had not provided sufficient medical documentation to support her requested accommodations and although her requested accommodations required Express to modify the essential functions of a Co-Manager position, Express nonetheless determined that it would provide them to her because Plaintiff had been accommodated in this manner for several years. Decl. Hinkle at ¶ 14; Deposition of Jennifer Hinkle at 37-40 (hereinafter, "Hinkle Dep.") (the relevant pages cited herein are attached as Exhibit G), Ex. 4; Klancic Dep. at 134. Plaintiff's deposition testimony confirms that she was being accommodated th rough January 2004 as she co ntinued to work a sporadic schedule which changed daily based on the weather. Plaintiff's Cont. Dep. at 35-6. Plaintiff testified, for example, that on January 5, 2004 she had a "later start" because it was "dark and rainy." Plaintiff's Dep. at 35.

Because of Plaintiff's unpredictable schedule, Ms. Hinkle authorized additional work hours to be budgeted to the store to assist the store in satisfying Plaintiff's work hour restrictions. Decl. Hinkle at ¶ 15; Hinkle Dep. at 39. These additional work hours permitted the store to cover the hours that Plaintiff claimed she could not work. Decl. Hinkle at ¶ 15; Plaintiff's Dep. at 98.

### G. Plaintiff's Resignation From Employment.

Plaintiff returned from her leave of absence on December 23, 2003. Plaintiff's Dep. at 84. Plaintiff continued to work until February 3, 2004 when Plaintiff requested, and was granted, a second FMLA leave. Plaintiff's Dep. at 82.[3]

Toward the conclusion of her leave of absence, Plaintiff requested an extension of her leave for non-medical reasons. Plaintiff's Cont. Dep. at 52. Specifically, Plaintiff's husband had been transferred to Virginia and Plaintiff was in the process of finding a new residence in Virginia. Plaintiff's Cont. Dep. at 54. The decision to move to Virginia was made "long before" this date. Plaintiff's Cont. Dep. at 52. Express does not provide for such leaves and Plaintiff's request was denied. Plaintiff's Cont. Dep. at 52-54.

Thereafter, on March 18, 2004, Plaintiff was released to return to work by her physician. Plaintiff's Dep. at 181, Ex. 12. Plaintiff tried, unsuccessfully, to extend the medical leave through discussions with her physician. Plaintiff's Cont. Dep. at 55. Rather than returning to work, Plaintiff submitted a letter of resignation. Plaintiff's Dep. at 181. At the time of her resignation, Plaintiff admits that she was in Virginia house hunting. Plaintiff's Cont. Dep. at 54. No explanation was provided in the resignation letter and Plaintiff did not provide any verbal explanations as to why she was resigning. Plaintiff's Dep. at 164, Ex. 4. When she did not receive a response to her resignation letter, Plaintiff mailed a second letter to the store and visited the store. Plaintiff's Cont. Dep. at 43, Ex. 8. At no time did Plaintiff provide any explanations for her resignation to Express. Plaintiff's Dep. at 164, Exs. 4, 8; Decl. Hinkle at ¶ 16.

It is undisputed that from the start of her leave of absence on February 3, 2004 through her resignation on March 18, 2004, Plaintiff had no discussions with either her Store Manager or

---

[3] Plaintiff concedes that all requested FMLA leaves were approved by Express. Plaintiff's Dep. at 78-79.

her District Manager regarding her accommodations or alleged lack thereof. Plaintiff's Dep. at Ex. 8; Klancic Dep. at 54.

### III. LAW AND ARGUMENT

#### A. Claims Asserted and Summary Judgment Standard.

Plaintiff's Complaint asserts one claim under the FMLA and two claims under the ADA. With respect to the ADA, Plaintiff's Complaint asserts a (1) a failure to accommodate claim;[4] and (2) a claim of harassment/constructive discharge.[5] As in this case, a party is entitled to summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact . . . " Huang v. BP Amoco Corp., 271 F.3d 560, 564 (3d Cir. 2001) (quoting Fed.R.Civ.P. 56(c)). Plaintiff has offered no competent evidence to support any of her claims. Rather, as set forth more fully below, the undisputed evidence confirms that the material facts are not in dispute and Express is entitled to summary judgment in its favor on Plaintiff's claims.

#### B. Plaintiff's FMLA Claim Is Facially Frivolous.

Plaintiff's FMLA claim is puzzling. Plaintiff requested two FMLA leaves during her employment – both of which Plaintiff confirmed were granted. Plaintiff's Dep. at 78-79; 81-82. At the time of her resignation, Plaintiff was released to return to work without restriction. Plaintiff's Dep. at Ex. 12. Plaintiff, in fact, admits that she cannot articulate any factual basis to support her FMLA claim. Plaintiff's Dep. at 78. Thus, by her own admission, her FMLA claim fails as a matter of law and summary judgment should be entered in Express' favor on this claim.

---

[4] Although Plaintiff never provided sufficient medical documentation to substantiate that she had a legally cognizable disability under the ADA, Express engaged in the interactive process with her when she raised her need for accommodations and, ultimately, accommodated her.

[5] Plaintiff's ADA theories fail as a matter of law as they are time-barred and/or she failed to exhaust her administrative remedies. Defendant has set forth the facts and authorities supporting these arguments in its Motion for Partial Summary Judgment, filed separately with the Court.

### C. Plaintiff's ADA Accommodation Claim Fails Because Although Plaintiff's Accommodation Requests Were Not Reasonable, Express Honored Them.

Other than her own conclusory, after-the-fact allegation that Express failed to accommodate her, Plaintiff offers no evidence to support her claim. To the contrary, the documented, undisputed evidence confirms not only that Express was not legally required to provide Plaintiff with her requested accommodations, but Express nonetheless did. Both of these facts are equally dispositive of Plaintiff's ADA accommodation claim.

Plaintiff's admitted inability to attend work as schedule precludes her from the protections of the ADA. It is undisputed that Plaintiff's requested accommodations resulted in her working a sporadic, day-only work schedule. Plaintiff admits that her work hours changed daily depending on the sun and the weather. Plaintiff's Dep. at 104-5; Plaintiff's Cont. Dep. at 35-41. Regardless of her schedule for a particular day, Plaintiff requested – and was provided – the ability to report to work late, leave early or stay at home, depending on the weather. Plaintiff's Dep. at 104-05. As Plaintiff acknowledges, she could not "pinpoint specific hours" that she was able to work (Plaintiff's Dep. at 104-5) - she "came in when she could get in." Plaintiff's Cont. Dep. at 38. Her schedule was truly unpredictable. Courts have found that employees, like Plaintiff, who are unable to be at work when scheduled renders them unqualified to perform the essential functions of the job and they, therefore, are not entitled to protections under the ADA. See Santiago v. Temple Univ., 739 F. Supp. 974, 979 (E.D.Pa.1990), *aff'd*, 928 F.2d 396 (3d Cir.1991) (employee with eye condition causing sporadic absences from work was not qualified for his position because "attendance is necessarily the fundamental prerequisite to job qualification."). See also Palazzolo v. Galen Hosp. of Texas, Inc., 1997 WL 837951, *3 (N.D. Ga. Nov. 25, 1997) (collecting cases) ("With rare exception, one cannot perform any function, essential or otherwise, if one is not present at work); Jackson v. Veterans Admn., 22

10

F.3d 277, 279 (11th Cir.1994) (requiring employer to accommodate unpredictable absences would be an undue burden).

On their face, Plaintiff's requested accommodations confirm that she was unable to perform the essential functions of the Co-Manager position. Reduced to their essence, Plaintiff's requested accommodations amounted to a request to modify the essential functions of the Co-Manager position. The Third Circuit has stated that "employers are not required to modify the essential functions of a job in order to accommodate an employee." Donahue v. CONRAIL, 224 F.3d 226, 232 (3d Cir. 2000) (decided under the Rehabilitation Act, 29 U.S.C. § 794, using the standards applied under the ADA). Stated otherwise, a request to be exempt from the essential functions of a job is, as a matter of law, unreasonable. Id. Even with her requested accommodations, it is undisputed that:

- Plaintiff could not work a consistent forty hour a week schedule (Klancic Dep. at 62, 101-2);

- Plaintiff could not open and close the store as regularly required, as the store opened for associates at 8 a.m. and closed at 11 p.m. – before and after daylight hours. (Klancic Dep. at 95); and

- Plaintiff could not be relied upon to report to work as scheduled. (Plaintiff's Dep. 104-5; Plaintiff's Cont. Dep. at 38-9).

Thus, the only way Express could provide Plaintiff with her accommodations was to change the job responsibilities of the Co-Manager position – which it was not legally obligated to do under the ADA. Ms. Klancic, in fact, testified that no other Co-Manager in her district was given such accommodations. Klancic Dep. at 89.

The root of Plaintiff's inability to meet the essential functions of the Co-Manager position was her inability to commute to and from work due to the weather. Plaintiff's Dep. at 104-5. Courts have found that commuting to and from work is not part of the work environment

that an employer is required to reasonably accommodate. See Laresca v. American Telephone & Telegraph, 161 F. Supp. 2d 323, 331 (D. N. J. 2001) (*citing* Bull v. Coyner, 2000 WL 224807 (N.D. Ill. Feb. 23, 2000); Salmon v. Dade Cty. Sch. Brd., 4 F. Supp. 2d 1157 (S.D. Fla. 1998) ("[the ADA] did not require an employer to 'eliminate those barriers which exist *outside* the workplace'" (emphasis in original)).

Bull is analogous to the present case and confirms the unreasonableness of Plaintiff's requested accommodations. In Bull, the plaintiff suffered from an eye injury that rendered him legally blind and impaired his ability to drive at night. Bull, 2000 WL 224807 at * 9. Despite having full knowledge of the plaintiff's limitation, the employer changed the plaintiff's schedule to require him to work at night. Id. The Court found there to be no ADA violation for failure to accommodate, noting that even if the employer "may have been insensitive or even malicious in requiring him to work at nights," the employer had no "legally-imposed obligation to be thoughtful." Id. As set forth in Bull, Express had no legal obligation to accommodate Plaintiff's inability to commute to work as scheduled.

Finally, there is no dispute that Plaintiff's requested accommodations resulted in other managers having to work more often or longer shifts to cover for Plaintiff. Klancic Dep. at 97, 99-102. As a matter of law, accommodations that burden other employees are unreasonable. See Lombardo v. Air Products and Chemicals, Inc., 2006 WL 1892677, *12 (E.D. Pa. July 7, 2006) (finding that an accommodation that would result in other employees having to work harder or longer is not a reasonable accommodation under the ADA); Milton v. Scrivner, Inc., 53 F.3d 1118, 1124-25 (10th Cir.1995) (same).

In sum, as set forth above, Plaintiff was not qualified to perform the essential functions of the Co-Manager position as she could not perform the essential functions of her job and she

could not be "reasonably" accommodated as a matter of law. This is fatal to Plaintiff's ADA accommodation claim.

Moreover, although Express was not required to accommodate Plaintiff, the documented, undisputed evidence confirms that Express did:

- Plaintiff testified that in January 2004, after her accommodations were allegedly withdrawn, she continued to report to work late due to weather conditions and was not disciplined (Plaintiff's Cont. Dep. at 35-39);

- It is undisputed that Plaintiff never complained to anyone at Express that she was not being properly accommodated (Decl. Hinkle ¶ 18; Zapp Dep. at 17);

- Plaintiff concedes that other than an occasional missed break or a longer work week – of which she never complained – Plaintiff's accommodations were being honored (Plaintiff's Dep. at 153-55);

- Ms. Klancic testified that although Plaintiff's schedule was posted in advance and could be modified if there were known issues, Plaintiff never complained that her schedule was not in accordance with her accommodations (Klancic Dep. at 29-30);

- Ms. Hinkle testified that at all times during Plaintiff's employment, Plaintiff's requested accommodations – even though they altered the essential functions of the Co-Manager position – were provided (Decl. Hinkle ¶ 14; Hinkle Dep. at 39-40);

- Co-Manager, Elise Zapp, testified that Express continued to accommodate Plaintiff up through her resignation (Zapp Dep. at 36);

- The documented emails between Ms. Hinkle, Ms. Klancic and Plaintiff show that Express never ceased providing Plaintiff with her requested accommodations (Hinkle Dep. at Ex. 4); and

- Ms. Klancic testified that if she, in fact, reviewed Plaintiff's requested accommodations and was the ultimate decision-maker, she would have honored them (Klancic Dep. at 134, Ex. 5).

Accordingly, Express is entitled to summary judgment in its favor of Plaintiff's ADA accommodation claim because, even though Express had no legal obligation to accommodate Plaintiff, it nonetheless did.

**D.    Judgment Should Be Entered In Favor Of Express On Plaintiff's ADA Harassment Claim.**

In order to demonstrate a disability-based hostile work environment, Plaintiff must show that: (1) she is a qualified individual with a disability under the ADA, (2) she was subject to unwelcome harassment, (3) the harassment was based on her disability or a request for an accommodation, (4) the harassment was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive working environment, and (5) Express knew or should have known of the harassment and failed to take prompt, effective remedial action. Walton v. Mental Health Ass'n. of Se. Pa., 168 F.3d 661, 666-67 (3d Cir.1999) (assuming, without deciding, that such a cause of action exists). Plaintiff's hostile work environment claim is without merit. Not only was Plaintiff not a qualified individual with a disability, as set forth above, but she also failed to provide sufficient evidence that the alleged conduct was sufficiently severe or pervasive to support a claim of disability-based harassment or that Express knew of the alleged harassment, but failed to remedy it.

In evaluating whether harassing conduct is "sufficiently severe or pervasive so as to alter the conditions of employment, a court must consider all the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993). The incidents "must be more than episodic, they must be sufficiently continuous and concerted" to amount to harassment. Faragher v. City of Boca Raton, 524 U.S. 775, 787 n. 1 (1998). Plaintiff cannot meet this standard.

Plaintiff claims that her co-workers made "snide" comments to her, but she cannot recall them "with accuracy." Plaintiff's Dep. at 91. She could only recall generally the following:

one, off-handed comment about her taking a break (Plaintiff's Dep. at 93); general comments about "how did she rate" (Plaintiff's Dep. at 93); comments about the weather being nice (Plaintiff's Dep. at 150); comments from her Store Manager indicating that she questioned her accommodations (Plaintiff's Dep. at 81); comments about it being nice not to have to do things (Plaintiff's Dep. at 151); and comments suggesting that Plaintiff "walks around [the store] doing nothing" (Plaintiff's Dep. at 151). Even assuming that these comments were made, other than vague "comments" by her Store Manager – who had the right to ask Plaintiff about her accommodations – none of the comments are directly attributable to her alleged disability or requested accommodations. They are simply innocuous, isolated comments. While they may have been offensive to Plaintiff, "[i]nsensitivity alone does not amount to harassment." Martin v. Allegheny Airlines, Inc., 126 F. Supp. 2d 809, 820 (M.D. Pa. 2000).

More telling, despite her admitted awareness of Express' complaint procedures, Plaintiff never complained about these alleged "on-going" comments during her employment. Plaintiff concedes that she filed only one complaint with the ethics hotline pertaining to the reporting of hours by other store employees. Plaintiff's Cont. Dep. at 47-50; Decl. Rock at ¶ 4. Plaintiff filed that complaint in April, 2004, but claims that she raised the issued during her employment – when she claims the alleged harassment was occurring. Plaintiff's Cont. Dep. at 47-50. That complaint did not include any allegation of harassment. Plaintiff's Dep. at 47-50; Decl. Rock ¶ 4. Similarly, during her employment, on January 30, 2004, Plaintiff filed a Charge with the Equal Employment Opportunity Commission. Her Charge also did not include any allegation of harassment. Plaintiff's Dep. at Ex. 6.

Express, in fact, first learned that Plaintiff believed that she was being harassed on the basis of her disability when Plaintiff filed her Complaint. Ms. Zapp, Ms. Klancic and Ms.

Hinkle confirmed that Plaintiff never reported any allegations of harassment during her employment. Zapp Dep. at 17; Decl. Hinkle at ¶ 17; Klancic Dep. at 46-48, 122. Consequently, Plaintiff cannot show that Express knew of the alleged harassment and failed to correct it.

Accordingly, Plaintiff cannot prevail on her disability-harassment claim and Express is entitled to summary judgment as a matter of law on that claim.

### E. Plaintiff Was Not Constructively Discharged.

Plaintiff was not constructively discharged. Rather, Plaintiff's employment with Defendant ended when she submitted her letter of resignation on March 18, 2004. Plaintiff's Dep. at 43, 181; Klancic Dep. at 50, 103. An employer constructively discharges an employee if "the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." Goss v. Exxon Office Sys. Co., 747 F.2d 885, 888 (3d Cir.1984). "Intolerability ... is assessed by the objective standard of whether a 'reasonable person' in the employee's position would have felt compelled to resign-that is, whether [she] would have had no choice but to resign." Connors v. Chrysler Fin. Corp., 160 F.3d 971, 976 (3d Cir.1998) (internal citations omitted).

Simply put, there is nothing approaching "intolerability" here. It is undisputed that during the relevant time at issue (November 2003 – March 2004) Plaintiff never complained to anyone at Express that her working conditions were intolerable. To the contrary, the month preceding her resignation, Plaintiff was on a FMLA leave. She was released to return to work without restriction on March 18, 2004. Plaintiff's Dep. at Ex. 12. She however wanted to extend her leave to continue her house hunting in Virginia. Plaintiff's Cont. Dep. at 52-54. When her physician refused to extend her leave, she resigned. Plaintiff's Cont. Dep. at 55. This is the only conclusion that is supported by the undisputed facts and it is the same conclusion Plaintiff's

District Manager, Ms. Klancic, reached. Klancic Dep. at 50, 103. Accordingly, Plaintiff's constructive discharge claim fails as a matter of law.

IV. **CONCLUSION**

Based on the above-cited arguments and authorities, judgment should be entered in favor of Express on Plaintiff's Complaint in its entirety.

                                          Respectfully Submitted,

                                          */s/ Sheldon K. Rennie (#3772)*
Francis G.X. Pileggi, Esquire (#2624)
Sheldon K. Rennie, Esquire (#3772)
**FOX ROTHCHILD LLP**
Citizens Bank Center, Suite 1300
919 North Market Street, P.O. Box 2323
Wilmington, Delaware 19899-2323
(302) 654-7444 (Tel); (302) 656-8920 (Fax)
E-MAIL: fpileggi@foxrothschild.com
E-MAIL: srennie@foxrothschild.com
    -and-

DAVID A. CAMPBELL (#0066494)
*Admitted pro hac vice*
LORI L. FAUVIE (#0076831)
*Admitted pro hac vice*
Vorys, Sater, Seymour and Pease LLP
2100 One Cleveland Center
1375 East Ninth Street
Cleveland, Ohio 44114
(216) 479-6100 (Tel);(216) 479-6060 (Fax)
dacampbell@vssp.com; llfauvie@vssp.com

*Attorneys for Defendant*

DATED: May 2, 2007