# EXHIBIT G

```
 1        IN THE UNITED STATES DISTRICT COURT
               DISTRICT OF DELAWARE
 2

 3

   PAULA PAGONAKIS,            )
 4                             )
         Plaintiff,            )
 5                             )
         vs.                   )   Civil Action No.
 6                             )   1:06-CV-00027 GMS
   EXPRESS, LLC, A/K/A         )
 7 LIMITED BRANDS, INC.,       )
                               )
 8       Defendants.           )

 9

10

11          VIDEOTAPED DEPOSITION

12            of JENNIFER HINKLE

13

14          Taken at the offices of
         VORYS, SATER, SEYMOUR & PEASE, LLP
15              52 East Gay Street
            Columbus, Ohio  43216-1008
16
        on November 20, 2006, at 10:02 a.m.
17

18    Reported by: Angela R. Starbuck, RPR

19

20

21               -=0=-

22

23

24
```

```
 1    handling all of the opening and closing
 2    tasks related to that store, hiring and
 3    coaching associates, coaching while they're
 4    on the floor selling to customers and sort
 5    of in off-peak times trying to, you know,
 6    build the capability of the associates in
 7    the store to increase top line sales.
 8         Q.  Okay.  And was there another
 9    co-manager -- I assume there was -- at that
10    store?
11         A.  I assume there was, but I -- I don't
12    know exactly what their -- their complement
13    was of management.
14         Q.  Okay.  And are you saying, then,
15    that a -- it's not possible for one
16    co-manager to work only daylight hours and
17    the other to work whatever the other hours
18    would be?
19         A.  That's correct.
20         Q.  It's not possible?
21         A.  Well, we were doing it.  It's -- I
22    mean, just to be clear, we accommodated all
23    of her -- her restrictions.  You know, we
24    had been doing so.  Back to your earlier
```

1   point, this had been going on for a little
2   while, so we continued to accommodate that.
3           Given any other set of circumstances
4   where this -- if this were a new case, if
5   you will, the first time we were seeing
6   somebody went out on leave and came back and
7   these were their accommodations, we would
8   not have been able to accommodate those.
9       Q.  Okay.  And did you -- do you know
10  whether that was accommodated after November
11  or December of 2003, whether she was allowed
12  to continue to work just daylight hours?
13      A.  She was -- I would have to go back.
14  It was the doctor -- the list of accommod --
15  or restrictions that we had from 12-23 that
16  we just looked at a little bit ago, those
17  accommodations we honored.
18      Q.  And --
19          MR. CAMPBELL:  Why don't we just be
20  clear --
21          MR. EHRENBERG:  Yeah.
22          MR. CAMPBELL:  -- is Exhibit 1 what
23  you're looking at?
24          THE WITNESS:  That's right.

```
 1    BY MR. EHRENBERG:
 2       Q.  And what -- what evidence -- or do
 3    you know whether there's any evidence that
 4    you continue to accommodate this other than
 5    you telling me that?
 6       A.  I'm not following your question.  I
 7    know I had conversations with the district
 8    manager and with Tara about this,
 9    instructing them to -- that we would
10    continue to accommodate these restrictions.
11       Q.  And do you know whether Tara and Ana
12    continued to accommodate them?
13       A.  Yes.
14       Q.  And I guess how did -- my question
15    is how do you know that they continued to be
16    accommodated?
17       A.  How do I know that?  I know we
18    funded the store -- I believe we funded the
19    store additional payroll hours to -- to
20    compensate for that.  The stores are only
21    allocated X number of hours to run their
22    store and so we would need to fund them
23    additional hours so that they would be able
24    to cover all of the open hours of the -- of
```

1   the store while Paula was working this
2   reduced schedule, if you will.
3        Q.   Now, why would that be necessary
4   if -- if there were two co-managers?  Why
5   would you need to pay more money?  Couldn't
6   the other co-manager be there in the
7   nighttime hours?
8        A.   It just isn't that simple.  So the
9   store opens -- and I don't know the exact
10  hours of Christiana Mall.  Most malls are
11  9:00 to 9:00, so Paula could only work
12  during daylight hours and couldn't drive if
13  it was foggy out, so there would be many
14  days where they would need a manager to open
15  the store and then Paula would come in
16  around 10:00 or 11:00 and then need to leave
17  by 4:00.  That's not a -- it's not an
18  eight-hour day and it's certainly not a
19  40-hour week, yet we were paying her for 40
20  hours.  So we would need to fund the store
21  additional hours to cover the hours that an
22  additional manager would need to be brought
23  in to cover, to make sure that we had
24  someone on-site at all times.

## Hinkle, Jennifer

**From:** Hinkle, Jennifer
**Sent:** Monday, December 29, 2003 1:31 PM
**To:** EXP Region 20011 - Klancic, Ana
**Subject:** RE: (no subject)

Yes and no, we do make every attempt to make an accommodation for an associate. We do however, always have the ability to say the restrictions are too severe and we cannot work with them. In these situations we would work with the lawyers to ensure we were OK with our position. In Paula's situation we may not have a choice because she has been working only day hours for years and years. It would be hard for us now to say that we couldn't accommodate her in this area. Does that make sense?

Have you received a copy of the restrictions? If so, what are your thoughts? If you want to discuss live today, call me at 614-226-6694.

Thanks Ana.

-----Original Message-----
**From:** EXP Region 20011 - Klancic, Ana
**Sent:** Monday, December 29, 2003 1:12 PM
**To:** Hinkle, Jennifer
**Subject:** RE: (no subject)

Hi Jennifer, thank you for getting this matter taken care of. But I do have a question? Do I really have a choice, but to accommodate her disability?

-----Original Message-----
**From:** Hinkle, Jennifer o
**Sent:** Monday, December 29, 2003 1:08 PM
**To:** PPag4@aol.com
**Cc:** EXP Region 20011 - Klancic, Ana
**Subject:** RE: (no subject)

Hi Paula, Susan faxed me a copy of your restrictions. It is now up to Ana and your Store Manager to determine if they can make the accommodations outlined by your doctor.

Ana, if you have any questions, or need any assistance while Tara is on PTO, please let me know.

Thanks,
Jennifer Hinkle
HR Manager, Express

-----Original Message-----
**From:** PPag4@aol.com [mailto:PPag4@aol.com]
**Sent:** Friday, December 26, 2003 4:46 PM
**To:** Hinkle, Jennifer
**Subject:** Re: (no subject)

Ms. Hinkle,

I have to again thank you for your direct and clear communication. I will follow up with Susan as recommended.

Paula J. Pagonakis



EXHIBIT 4
Hinkle 11-20-06

12/30/2003

## Hinkle, Jennifer

**From:** PPag4@aol.com
**Sent:** Monday, December 29, 2003 6:06 PM
**To:** Hinkle, Jennifer
**Cc:** EXP Region 20011 - Klancic, Ana
**Subject:** Re: (no subject)

Ms. Hinkle,

I am glad you have received the copy of accommodations needed. Hopefully, all parties needing them, now, have them. If anything further is needed, please do not hesitate to inform me and I will be happy to provide whatever is needed as soon as possible.

FYI: Ana and I have been discussing and working with accommodating my disabilities all along until Tara came into my store and told me that Ana did not have the authority to work with me in this regard and took my accomodations away. Now you are saying it is up to Ana and the store manager to provide these accomodations.

A lot of time, effort and expense for all parties concerned was expended in this exercise. Sorry if I am venting but this has been frustrating, causing me much stress and has cast me in a negative light within the company. It seems to me, all that was needed was an update of my disabilities.

Once again, I appreciate your intervention in providing clarity and direction contributing to the resolution of this matter.

Sincerely,

Paula J. Pagonkais

3/5/2004

EXPRESS-PAG000041