## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF DELAWARE

| | |
|---|---|
| PAULA PAGONAKIS ) | |
| ) | |
| Plaintiff, ) | Case No. 06-027 (SLR) |
| ) | |
| v. ) | **JURY TRIAL DEMANDED** |
| ) | |
| EXPRESS, LLC, a/k/a/ ) | |
| LIMITED BRANDS, INC. ) | |
| ) | |
| Defendant. ) | |

### PLAINTIFF'S BRIEF IN OPPOSITION TO
### DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff Paula Pagonakis ("Plaintiff"), through her undersigned counsel and pursuant to Rule 56 of the Fed. R. Civ. P., hereby opposes Defendant Express, LLC's ("Defendant's") Motion for Partial Summary Judgment (Docket Nos. 48 and 49) with regard to her claim for discrimination under the Americans With Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12001, et seq. ("ADA").

### I. STATEMENT OF UNDISPUTED MATERIAL FACTS

Defendant's motion for partial summary judgment places at issue the administrative proceedings below and the timing of Plaintiff's filing of her lawsuit. Thus, this statement of facts relates to the issues relevant to the instant motion. Plaintiff notes that Defendant does not set forth what facts it contends are material and undisputed – a requirement for a motion for summary judgment.

1. Plaintiff worked for Defendant from 1999 through March 18, 2004, at which time she was constructively discharged. [Pagonakis Decl. at 2].

2. Plaintiff lived in or around Wilmington, Delaware from approximately June 2000 through early September 2005. [Pagonakis Decl. at 3].

3. On or about January 30, 2004, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) alleging unlawful discrimination based on disability. In this charge, (her "original charge"). [Ex. 1 to Pagonakis Decl.].

4. The EEOC conducted an investigation into Plaintiff's charge of discrimination, including the facts surrounding the retaliation Plaintiff suffered at the hands of Defendant and its agents. [Pagonakis Decl. at 5].

5. Plaintiff moved to Charlottesville, Virginia in September 2005. [Pagonakis Decl. at 6].

6. On or before September 21, 2005, Plaintiff promptly notified the EEOC of her new address, in Charlottesville, Virginia. According to Plaintiff's testimony at her deposition:

> Q: Did you ever inform the EEOC that you were moving from Delaware to an address in Charlottesville, Virginia?
>
> A: Absolutely.
>
> Q: And do you recall approximately when that was.
>
> A: I believe it was in conjunction with my investigator telling me that he was probably going to be releasing it and telling me that he would be mailing this out.
>
> Q: And do you remember –
>
> A: And I told him then that I was moving and gave him the new address and phone number. At that time it was before, this was – before he had told me – it was before he told me whether he definitely was releasing it or not.
>
> Q: So at sometime prior to October 5, 2005 you notified the investigator that you had been speaking with that you were moving and did you provide him your new address?

2

>   A:   I provided him with the address and a phone number that I could be contacted at.

[Ex. 2 to Pagonakis Decl.]. The notes of the EEOC investigator handling Plaintiff's charge of discrimination confirm that, as of September 21, 2005, Plaintiff had notified the EEOC that she was moving to Virginia and had provided the EEOC with her new address. [Ex. 3 to Pagonakis Decl.].

7.   At or around this time, and at the behest of the investigator handling her charge of discrimination, Plaintiff amended her charge of discrimination to reflect the fact that she had been constructively discharged from her employment with Defendant. In recognition of Plaintiff's new address in Charlottesville, Virginia, the EEOC mailed the amended charge to Plaintiff's address in Charlottesville, Virginia. [Ex. 4 to Pagonakis Decl. (EEOC letter of September 21, 2005 to Paula Paganokis)]

8.   Plaintiff received the amended charge of discrimination approximately six days after it was mailed from Philadelphia, Pennsylvania to Charlottesville, Virginia. On the day after she received the amended charge of discrimination, September 28, 2005, Plaintiff signed the amended charge, adding a narrative explaining that she was forced to resign from her employment due to the ongoing discrimination and Defendant's continued failure to accommodate her. [Pagonakis Decl. at 11].)

9.   On October 5, 2005, the EEOC issued Plaintiff a notice of right to sue with regard to the charges of discrimination. [Ex. 4 to Pagonakis Decl.].

10.   Despite having Plaintiff's new address in Charlottesville, Virginia, (and despite the fact that the EEOC had previously mailed the amended charge to Plaintiff's new address in Virginia), the EEOC nevertheless mailed the right to sue letter to Plaintiff's old address in Delaware. [Ex. 5 to Pagonakis Decl.].

11. According to the post-markings on the envelope containing the right to sue letter, it took the U.S. Postal Service six days (until October 11, 2005), in order to readdress the right to sue letter. [Ex. 5 to Pagonakis Decl.].

12. Plaintiff received the right to sue letter six days after the letter was readdressed to her proper address – on October 17, 2005. [Ex. __ to Pagonakis Decl.]. Considering that: (1) Plaintiff did not receive the amended charge of discrimination that the EEOC had properly mailed to her address in Charlottesville, Virginia until six days after that document had been postmarked; (2) it took six days for the U.S. Postal Service to turn around the mis-addressed right to sue letter; and (3) Monday, October 10, 2005 was a federal holiday (Columbus day), (*see* <http://www.opm.gov/fedhol/2005.asp>), and, therefore, no mail was delivered on that day, it is beyond dispute that it took six days, until October 17, 2006, for the right to sue letter to reach Plaintiff in Charlottesville, Virginia.

13. This objective evidence is supported by Plaintiff's sworn testimony at her deposition:

> Q: When did you receive the Right to Sue letter Exhibit 7?
>
> A: I received it on the 17th.
>
> Q: Of October?
>
> A: Yes.
>
> Q: How did you receive it?
>
> A: It was forwarded from the Middletown, Delaware Post Office on the 11th.

[Ex. 2 to Pagonakis Decl.]. This objective evidence is also supported by Plaintiff's contemporaneous notes. [Exs. 4, 5 to Pagonakis Decl.].

14.     Plaintiff timely filed this civil action on January 13, 2006 – within 90 days of her October 17, 2005, receipt of the right to sue letter. *See* Docket No. 1.

## II. ARGUMENT[1]

In its Motion, Defendant makes two arguments. First, Defendant asserts that Plaintiff's judicial complaint is untimely, because it allegedly was filed outside of the ninety day period after Plaintiff's receipt of her right to sue letter. In support of this argument, Defendants ask this Court to ignore objective facts and Plaintiff's unimpeached testimony and instead, rely upon an inapplicable mailing rule set forth in the Federal Rules of Civil Procedure.

In its second argument, Defendant argues that Plaintiff failed to exhaust her administrative remedies because her charge did not include a (1) "check" in the box for retaliation and (2) through no fault of the Plaintiff, the EEOC failed to "actually" investigate Plaintiff's constructive discharge claim. These arguments fail because under well-settled law: (1) the scope of the charge here encompassed retaliation – and courts do not apply a woodenly formalistic approach in considering the scope of a charge; and (2) courts do not hold any failure to investigate by the EEOC against a plaintiff. Finally, Defendant also, inexplicably, asserts that Plaintiff should not be allowed to bring a harassment claim. Plaintiff's case is not premised on "disability harassment," and the portion of Defendant's motion that relates to a purported claim for "disability harassment" should be ignored as non-responsive to Plaintiff's Complaint.

---

[1] This Court is no doubt very familiar with the standard for summary judgment. A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus Co. v. Zenity Radio Corp.*, 475 U.S. 574 (1984). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 203 n.1 (3d Cir. 1995) (internal citations omitted). Courts are to "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). A court should not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

Plaintiff's allegations concerning harassment are averred as background to demonstrate in part the willful and deliberate nature of Defendant's disparate treatment and failure to accommodate.

### A. Plaintiff Timely Filed Her Judicial Complaint.

Defendant first argues that Plaintiff failed to file her complaint within the 90-day file period after having received a right to sue letter from the EEOC. At best, Defendant describes an area of dispute that may not be resolved on summary judgment.

Discrimination complaints, such as Plaintiff's here, must be brought within 90 days of receiving a right-to-sue letter from the EEOC. *See Mosel v. Hills Dep't Store, Inc.*, 789 F.2d 251, 252 (3d Cir. 1986). This ninety-day statute of limitations period begins when the plaintiff or plaintiff's counsel receives the right-to-sue letter. *See Seitzinger v. The Reading Hosp. and Med. Ctr.*, 165 F.3d 236, 239-40 (3d Cir. 1999). Here, Plaintiff received her right to sue letter on October 17, 2005 and filed her Complaint on January 13, 2006; thus, she timely filed her Complaint within 90 days of her receipt of her right-to-sue letter.

Defendant asserts that Plaintiff had to have received her right to sue letter on or before October 14, 2005 – *i.e.*, within three days of its mailing. Defendant further asserts that where there is a dispute as to the date a right to sue letter is received, the "three day rule" contained in Rule 6(e) of the Federal Rules of Civil Procedure applies. Defendant's argument here is contrary to binding Third Circuit case law and this argument must, as a matter of law, fail.

In the Third Circuit, Rule 6(e) is inapplicable – the ninety-day statute of limitations period begins to run upon actual receipt of a right to sue letter. *See Dunlap v. Boeing Helicopter Div.*, No. 03-CV-2111, 2005 U.S. Dist. LEXIS 2781 (E.D. Pa. Feb. 23, 2005), citing *Mosel v. Hills Dep't Store, Inc.*, 789 F.2d 251, 252 (3d Cir. 1986) (holding that Rule 6(e) was inapplicable to determining the *actual* receipt date of an EEOC right-to-sue letter). In the Third Circuit,

6

where there is a dispute as to the date a right to sue letter is received, it is an issue of fact for the trier of fact to determine. *Id.* at *7-8.

The facts in *Dunlap* are similar to the facts in the instant case. In *Dunlap*, the plaintiff asserted that he received his right-to-sue letter on January 2, 2003. Plaintiff stated the January 2, 2003 receipt date in his complaint and in a declaration attached to the complaint. The plaintiff also testified in his deposition that he kept a record of the day that he received his right-to-sue letter and that he used this day in his complaint. The EEOC right-to-sue letter was mailed ten days before Plaintiff claimed to have received the letter. Plaintiff's counsel also postulated that the ten-day delay could have been caused by the 2002 holiday season and the fact that December 25th, 28th, 29th, 2002 and January 1, 2003 were non-mail days. *Dunlap*, 2005 U.S. Dist. LEXIS 2781, at *7-*8.

The defendant argued that the court should apply the "three day rule" under Rule 6(e). Senior Judge Clifford Scott Green of the Eastern District of Pennsylvania rejected defendant's assertion, holding that:

> the Third Circuit makes clear that Rule 6(e) is inapplicable and that the ninety-day statute of limitations period begins to run upon actual receipt. [citing *Mosel,* 789 F.2d at 253]. In the instant matter, Plaintiff has provided sufficient evidence to demonstrate that he received his right-to-sue letter on January 2, 2003. In any event, the date of receipt is a disputed fact and therefore cannot be a basis for summary judgment pursuant to Federal Rule of Civil Procedure 56(c).

*Dunlap*, 2005 U.S. Dist. LEXIS 2781, at *8.

Similarly, in the instant case, Plaintiff has steadfastly maintained that she received the right-to-sue letter on October 17, 2005. She testified as to this date under oath in her deposition, she used this date in her Complaint, and she has provided a declaration in support with that date. Further, the objective circumstances surrounding Plaintiff's move to Charlottesville, Virginia, support Plaintiff's position. For example, it is undisputed that: (1) Plaintiff moved to

Charlottesville, Virginia, in September 2005; (2) Plaintiff informed the EEOC investigator of her new address, her new address is reflected in the EEOC investigator's notes, and the EEOC used the new address to mail Plaintiff her amended charge of discrimination two weeks before it mailed her right to sue letter; (3) inexplicably, on October 5, 2005, the EEOC mailed the right to sue letter to Plaintiff's old address and it took the U.S. Postal Service six days – to October 11, 2006 – to readdress the right to sue letter; (4) other mail sent from Philadelphia EEOC to Plaintiff's Charlottesville, Virginia address took at least six days (the amended charge of discrimination); and (5) as was the case in *Dunlop*, there was an intervening federal holiday (Columbus day). It is thus entirely reasonable that, once the U.S. Postal Service forwarded the right to sue letter to Plaintiff's proper address (which the EEOC already had – and had previously used), it took six days for the mail to reach Plaintiff.

The case law that Defendant cites in support of its argument is inapposite, *see DuPree v. United Food & Commercial Workers Union, Local 27*, 2005 U.S. Dist. LEXIS 167 (D. Del. 2005) and *Arots v. Salesianum Sch., Inc.*, 2003 U.S. Dist. LEXIS 10171 (D. Del. 2003). Each of those cases involved a Plaintiff that provided *no* evidence to support their bare assertion of when they received their right to sue letters. Further, each plaintiff purported to receive their right to sue letter well after the letter was mailed. Indeed, Plaintiff's case here is not in conflict with these cases. According to *Dupree*,

> [w]hen the receipt date of the right to sue letter is in dispute, *and there is no evidence pertaining to when the letter was actually received*, Rule 6(e) of the Federal Rules of Civil Procedure will control by invoking the presumption of receipt within three days of mailing.

2005 U.S. Dist. LEXIS 167, at *4-*5 (emphasis added).

The facts concerning Plaintiff are different, because there *is* abundant evidence pertaining to when the letter was actually received. Indeed, in addition to Plaintiff's unimpeached sworn

8

testimony that she received the right to sue letter on October 17, 2005, it is undisputed that the *EEOC sent Plaintiff's right to sue letter to the wrong address*. Further, objective facts demonstrate that other mailings from the EEOC to Plaintiff took six days to reach Plaintiff in Charlottesville, Virginia.

In sum, Defendant would have this Court supplant *actual* dates (even those that are undisputed – such as the fact that it took *six days* for the U.S. Postal Service even to *forward* the right to sue letter to Plaintiff's forwarding address) with a constructive fictional three days. At best, Defendant points out an issue of fact for trial, and its argument here should be rejected.

### B. Plaintiff Exhausted Her Remedies for Retaliation and Constructive Discharge.

In its second argument, Defendant asserts that Plaintiff failed to exhaust her administrative remedies with respect to her claims for harassment, retaliation, and constructive discharge. Plaintiff has not brought a claim for harassment. Rather, she and other witnesses describe the harassment that Plaintiff suffered as evidence of the willfulness of Defendant's actions; thus, Plaintiff does not address the harassment issue herein.

First, Defendant asserts that Plaintiff's charges of discrimination, that she drafted and filed with the EEOC, do not encompass retaliation. Defendant's argument is without merit, because the retaliation claim falls fairly within the scope of the EEOC complaints and investigation therefrom. In the Third Circuit, the court must determine whether "the claims at issue fall fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." *Antol v. Perry*, 82 F. 3d 1291, 1295 (1996). Courts must "keep in mind that charges are drafted by one who is not well versed in the art of legal description." *Hicks v. ABT Assoc., Inc.,* 572 F. 2d 960, 965 (3d Cir. 1978).

*Ruberg v. Outdoor World Corp.*, No. 4:CV 05-01520, 2006 U.S. Dist. LEXIS 35374 (M.D. Pa., Feb 8, 2006,) is instructive. In *Ruberg*, the defendant moved to dismiss the plaintiff's retaliation claim on the theory that it was not exhausted at the administrative level. The court rejected the defendant's argument and held that plaintiff's retaliation claims could proceed. In so ruling, that court first noted that the plaintiff – just like the Plaintiff here – "proceeded at the administrative level *pro se* and therefore, we are to liberally construe his complaint." *Id.* at *8-*9. Finally, the court ruled that, "although perhaps somewhat inartfully drafted, the Plaintiff alleged in his PHRC complaint that he requested a reasonable accommodation due to his HIV-positive status and was thereafter terminated from his job because of his disability." *Id.* at *9. So to here, Plaintiff (who was *pro se* at the administrative level) alleged that she sought reasonable accommodations for her disabilities, which were initially granted. Several years later, and without reasonable explanation, Defendant refused to further accommodate Plaintiff. After Plaintiff returned from a qualified leave pursuant to the Family and Medical Leave Act, and persisted in her requests for accommodation, Defendant and its agents retaliated against her by refusing to reinstate Plaintiff's accommodations, resulting in her constructive discharge.

Second, Defendant asserts that Plaintiff's constructive discharge claim, which arises out of her amended charge, is doomed because of the failure of the EEOC to attempt reconciliation or investigate the amended charge. According to Defendant, the EEOC issued the right to sue letter shortly after the issuance of the amended charge. Defendant's argument here need not detain the Court long, because the argument has been rejected wholesale by a line of robust case law. Indeed, it has long been held that the failure of the EEOC to give notice of a charge to the employer involved or its failure to attempt reconciliation, both of which are required by section

706(b) of Title VII, 42 U.S.C. § 2000e-5(b), does not bar a civil suit by the charging party. *See*, *e.g.*, *Hicks v. ABT Associates, Inc.*, 572 F.2d 960, 964 (3d Cir. 1976); *Waters v. Heublein, Inc.*, 547 F.2d 466, 468 (9th Cir. 1976); *Thornton v. East Texas Motor Freight*, 497 F.2d 416, 424 (6th Cir. 1974); *Dent v. St. Louis-San Francisco Railway Co.*, 406 F.2d 399, 402-03 (5th Cir. 1969).

These decisions are based on the concept that, once the Commission has been given its chance to reconcile the parties informally, the individual's right to bring a civil action becomes an indispensable part of the enforcement scheme of Title VII. This right is not be defeated by the EEOC's failure to comply with its statutory obligations. *See Waters v. Heublein, Inc.*, 547 F.2d at 468; *Thornton v. East Texas Motor Freight*, 497 F.2d at 424; *McAdams v. Thermal Industries, Inc.*, 428 F. Supp. 156, 159-60 (W.D. Pa. 1977); *Fesel v. Masonic Home of Delaware, Inc.*, 428 F. Supp. 573, 576 (D. Del. 1977). In fact, Plaintiff had no ability or authority to force the EEOC to investigate the amended charge – to hold otherwise would be ridiculous. Plaintiff's claim for constructive discharge cannot be dismissed for failure to exhaust administrative remedies.

### III.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny the Motion.

Dated: May 23, 2007                                        Respectfully submitted,

//s// *James C. Bailey*
_____
James B. Bailey*
Jason H. Ehrenberg*
BAILEY & EHRENBERG PLLC
1155 Connecticut Avenue NW
Suite 1100
Washington, D.C. 20036
Tel:  (202) 465-4729
Fax:  (202) 318-7071
jhe@becounsel.com

and

Gary W. Aber
Aber, Golust, Baker & Over
702 King Street
P.O. Box1675
Wilmington, DE 19899
Tel: (866) 826-4950
Fax: (302) 472-4920
gaber@gablawde.com

* Admitted *pro hac vice*

**CERTIFICATE OF SERV ICE**

The undersigned certifies that on this 23rd day of May 2006, copies of the foregoing were served via the District Court's ECF electronic filing system upon the following:

Francis G.X. Pileggi
Sheldon K. Rennie
Fox Rothchild LLP
Citizens Bank Center, Suite 1300
919 North Market Street
P.O. Box 2323
Wilmington Delaware  19899-2323


David Campbell
Lori L. Fauvie
Vorys, Sater, Seymour and Pease LLP
1375 East Ninth Street
2100 One Cleveland Center
Cleveland, Ohio 44114-1724

                                                     //s// *Jason H. Ehrenberg*
                                                     _____
                                                     Jason H. Ehrenberg