**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF DELAWARE**

_____

| | |
|---|---|
| PAULA PAGONAKIS | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| EXPRESS, LLC, a/k/a/ | ) |
| LIMITED BRANDS, INC. | ) |
| | ) |
| Defendant. | ) |

Case No. 06-cv-0027 (SLR)

**JURY TRIAL DEMANDED**

_____)

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Paula Pagonakis ("Plaintiff"), through her undersigned counsel and pursuant to Rule 56 of the Fed. R. Civ. P, hereby submits her Memorandum of Points and Authorities in Opposition to Defendant Express, LLC's ("Defendant") Motion for Summary Judgment (the "Motion") (Docket No. 50 and 51).

**I. INTRODUCTION**

The summary judgment procedure is a method for promptly disposing of actions in which there is no genuine issue as to any material fact trial, as well as a means to allow courts to narrow the issues before trial in actions in which genuine issues of material fact exist. Defendant's Motion does little to assist the Court with this process and represents the culmination of Defendant's efforts – through concealment and omission – to sidestep the essential facts of this case. In essence, Defendant seeks to have the Court believe that it did no wrong when it failed to properly train Plaintiff for her managerial position, suddenly and without prior notice withdrew Plaintiff's workplace accommodations and refused to reinstate them, and then constructively discharged Plaintiff from her employment. Defendant's Motion fails because: (1) it relies

entirely upon the self-serving affidavit of one of its current employees; (2) it contains no documentary evidence to support this affidavit; and (3) it ignores myriad disputed material facts (as well as undisputed facts) which demonstrate that Defendant discriminated against Plaintiff in violation of the Americans With Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12001, et seq. ("ADA"), and the Family and Medical Leave Act, 26 U.S.C. § 2601, *et seq*. ("FMLA"). Because Defendant has not satisfied its burden of proving that no genuine issue of material fact exists, because core credibility determinations are necessary to allow the fact-finder to resolve disputed facts, and because Defendant willfully has failed to comply with its discovery obligations by withholding key evidence, the Motion should be denied.

## II.   STATEMENT OF MATERIAL FACTS IN DISPUTE[1]

1.   "The essential functions of the Co-Manager position are not in dispute.  A Co-Manager is expected to work a consistent forty-hour a week schedule in the store, be able to open and close the store on a regular basis, and have regular attendance.  A Co-Manager is required to be present in the store – not work from home."  *See* Motion at 4-5.

Plaintiff's Response:  Denied.  Defendant has presented no evidence in support of this "fact" other than the self-serving affidavit of its own employee, Jennifer Hinkle.  Defendant has not produced in this litigation, nor cited in its Motion, a single document that supports Ms. Hinkle's bald assertion.  In contrast, there is ample evidence in the record demonstrating that these are not essential functions of the job.

2.   "It is undisputed that Plaintiff's requested accommodations resulted in her working a sporadic, day-only work schedule."  *See* Motion at 10.

---

[1]   Although Defendant has not properly set forth a statement of undisputed material facts in its Motion (Defendant has merely set forth a statement of facts it deems "*relevant*" to its Motion), Plaintiff has attempted to cull from the Motion the allegedly "undisputed" material facts upon which Defendant relies in support of its Motion.  Plaintiff sets forth these allegedly undisputed material facts below, as well as Plaintiff's evidence demonstrating that there exists a genuine dispute as to these facts.

<u>Plaintiff's Response</u>: Denied.  Defendant has presented no evidence to support that Plaintiff worked a "sporadic" schedule – *i.e.*, Defendant has presented no evidence that Plaintiff was ever absent from work on days Defendant scheduled her to work.  In contrast, there is ample evidence in the record demonstrating that after Defendant withdrew Plaintiff's workplace accommodations, Plaintiff was forced to – and in fact did – work at night and beyond her previously accommodated physical limitations.

3.      "It is undisputed that Plaintiff's requested accommodations did not allow her to perform the essential functions of the Co-Manager position."  *See* Motion at 5.

<u>Plaintiff's Response</u>:  Denied.  There is ample evidence in the record demonstrating that Plaintiff was at all time relevant a qualified individual with a disability within the meaning of the ADA because Plaintiff could at all times relevant perform the essential functions of her job with reasonable accommodations.  The evidence in the record demonstrates that that Plaintiff was able to perform the essential functions of the Co-Manager position when provided with the requested accommodations.

4.      "It is undisputed that from the start of her leave of absence on February 3, 2004 through her resignation on March 18, 2004, Plaintiff had no discussions with either her Store Manager or her District Manager regarding her accommodations or alleged lack thereof."  *See* Motion at 8-9.

<u>Plaintiff's Response</u>:  Denied.  There is ample evidence in the record demonstrating that Plaintiff attempted to communicate – both orally and in writing – with her Store Manager and her District Manager regarding her accommodations and lack thereof between February 3, 2004 and March 18, 2004.

5.      "Plaintiff voluntarily resigned from her employment with Defendant on March 18, 2004." *See* Motion at 2-3.

<u>Plaintiff's Response</u>:  Denied.  The evidence in the record demonstrates that Plaintiff was constructively discharged from her employment with Defendant.  The fact that Plaintiff chose to submit a letter of resignation – rather than simply refuse to inform her employer that she could no longer come to work – has no bearing on whether the termination of her employment was voluntary.

6.      "It is undisputed that Plaintiff never complained to anyone at Express that she was not being properly accommodated."

<u>Plaintiff's Response</u>:  Denied.  There is ample evidence in the record demonstrating that Plaintiff attempted to communicate – both orally and in writing – with her Store Manager and her District Manager regarding her accommodations and lack thereof between from the date her accommodations were withdrawn until the date of the termination of her employment.

7.      Defendant never ceased to provide Plaintiff with her accommodations.

<u>Plaintiff's Response</u>:  Denied.  There is ample evidence in the record demonstrating that, in November 2003 Defendant ceased providing Plaintiff with workplace accommodations. There is also ample evidence in the record demonstrating that Defendant did not reinstate Plaintiff's workplace accommodations prior to the termination of Plaintiff's employment in March 2004.

## III.    STATEMENT OF MATERIALS FACTS NOT IN DISPUTE

1.      As a result of a traumatic brain injury suffered in a car accident on April 12, 1995, Plaintiff has been diagnosed as having Closed Head Injury, Adjustment Disorder with Depressed

Mood, Cognitive Disorder, and Fibromyalgia.  [Ex. 1, Pagonakis Dep. at pp. 10-11; Ex. 2, Pagonakis Decl. at 2; Ex. 3].[2]

2.      Plaintiff has persistent visual dysfunction related to her closed head injury.  This at time causes her difficulty with reading and causes her to become disoriented, or lose her equilibrium, when exposed to bright or moving lights or other visual stimuli (such as multiple objects moving simultaneously).  Plaintiff also has persistent vertigo related to her closed head injury with a tendency toward backward imbalance.  As a result of these physical and mental impairments, Plaintiff experiences difficulty processing auditory and written information, is easily distracted, and has trouble organizing her thoughts.  Plaintiff also has multiple areas of pain in her neck, back and limbs due to the fibromyalgia.  [Ex. 2 Pagonakis Decl. at 3; Ex. 3].

3.      Plaintiff's physical and mental impairments – namely her trouble processing auditory and visual information – severely restrict her ability to perform several major life activities.  Plaintiff is substantially limited in her ability to see, hear, read, think, work and drive as a result of her physical and mental impairments.  [Ex. 2 Pagonakis Decl. at 4].[3]

4.      In November 1997, Plaintiff began working for Express as a part-time salesperson in Ohio.  At the time of her interview for the part-time salesperson position, Plaintiff informed representatives of Express that she had the physical and mental impairments noted above. Plaintiff provided representatives of Defendant with relevant medical information at the time and requested that Defendant accommodate these physical and mental impairments, by among other things, allowing Plaintiff to work during daylight hours only and working a fairly flexible schedule.  Defendant accommodated these disabilities at the time.  [Ex. 2, Pagonakis Decl. at 5].

---

[2]      Defendant has not disputed in its Motion that Plaintiff was at all times relevant disabled within the meaning of the ADA.

[3]      Defendant has not disputed in its Motion that Plaintiff was at all times relevant disabled within the meaning of the ADA.

5.      In June 2000, Plaintiff transferred from Ohio to Newark, Delaware as a part-time salesperson.  Plaintiff's personnel file, including the information regarding her disabilities and necessary accommodations, was transferred to the Newark Delaware place of business.  [Ex. 4, Klancic Decl. at 2; Ex. 2, Pagonakis Decl. at 6].

6.      Ana Klancic was the District Manager in charge of the Christiana Mall store from the time Plaintiff transferred to the Christiana Mall store in June 2000 through the termination of Plaintiff's employment in March 2004.  [Ex. 4 Klancic Decl. at 2; Ex. 5, Zapp Dep. at 8].  In her capacity as District Manager, Ms. Klancic had frequent contact with, and supervision over, Plaintiff.  [Ex. 4, Klancic Decl. at 2].

7.      Kristen Bosley was the Store Manager of the Christiana Mall store during Plaintiff's tenure at that store, and had supervisory authority over Plaintiff.  [Ex. 5, Zapp. Dep. at 8, 18].

8.      Elise Zapp (formerly O'Neill) was a Co-Manager of the Christiana Mall store during Plaintiff's tenure at that store, and also had supervisor authority over Plaintiff.  [Ex. 5, Zapp. Dep. at 11-12].

9.      Plaintiff's supervisors and co-workers at the Christiana Mall store were aware that Plaintiff suffered from medical conditions/disabilities that necessitated certain workplace accommodations.  [Ex. 4, Klancic Decl. at 3; Ex. 5, Zapp. Dep. at 31-32; Ex. 6, Klancic Dep. at 58-59, 95; Ex. 7, Carpenter Decl. at 1-6].

10.     When Plaintiff began working at the Christiana Mall store in June 2000, she discussed her medical conditions/disabilities and need for certain accommodations in the workplace with her supervisors, Ms. Bosley and Ms. Klancic.  [Ex. 4, Klancic Decl. at 3; Ex. 2, Pagonakis Decl. at 11].  Plaintiff's supervisors subsequently authorized certain workplace

accommodations for Plaintiff.  [Ex. 4, Klancic Decl. at 3].  These accommodations included:  (a) allowing Plaintiff to take periodic breaks; (b) scheduling Plaintiff only for daylight hours; (c) not assigning Plaintiff tasks that called for climbing; (d) scheduling Plaintiff for a day off every three to four days; and (e) periodically allowing Plaintiff to work from home.  [Ex. 4, Klancic Decl. at 3].

11.     In March 2002, Plaintiff was promoted by Ms. Klancic into the position of Brand Sales Leader.  This position was a full-time, quasi-managerial position.  Defendant continued to provide Plaintiff the previously authorized workplace accommodations subsequent to this promotion.  [Ex. 2, Pagonakis Decl. at 12].

12.     After Plaintiff was promoted into the position of Brand Sales Leader in March 2002, Ms. Klancic and Ms. Zapp began to make offhanded comments to other store personnel about Plaintiff's disabilities and about their view that Plaintiff was not "management material" because of her disabilities.  [Ex. 2, Pagonakis Decl. at 13].  Other store personnel also made such comments.  [Ex. 5, Zapp. Dep. at 34-35].

13.     Plaintiff complained about this unwelcome treatment to her District Manager, Ana Klancic, on many occasions.  In response, Ms. Klancic instructed Plaintiff to "just go along with it," "not ruffle feathers," and "try to find a way to avoid [the other managerial employees] making the comments."  [Ex. 2, Pagonakis Decl. at 14]

14.     In June 2003, Ms. Klancic promoted Plaintiff into the position of Co-Manager at the Christiana Mall store.  [Ex. 4, Klancic Decl. at 4].  At the time of her promotion, Plaintiff provided additional information to Ms. Klancic about her physical and mental impairments so that Ms. Klancic would fully understand Plaintiff's physical and mental limitations and so that Ms. Klancic could make sure that Plaintiff could effectively perform the essential functions of

7

this new position.  [Ex. 2, Pagonakis Decl. at 15].  Because Ms. Klancic felt that Plaintiff was an asset to her team and could perform the essential functions of the position of Co-Manager with her prior workplace accommodations in place, Ms. Klancic agreed to keep Plaintiff's workplace accommodations in place.  [Ex. 4, Klancic Decl. at 4].

15.     As had been the case in her position of Brand Sales Lead, Plaintiff was required as a Co-Manager, to work a forty-hour work week.  Plaintiff satisfied this requirement.  [Ex. 6, Klancic Dep. at 61-62].

16.     At the time Plaintiff became a Co-Manager, there were between five and seven Co-Managers at the Christiana Mall store, with each Co-Manager having differing areas of responsibility.  [Ex. 5, Zapp. Dep. at 9].

17.     Although Defendant promoted Plaintiff into the position of Co-Manager, and although Plaintiff was supposed to receive extensive training to prepare her for the position of Co-Manager, [Ex. 5, Zapp. Dep. at 25-26], Plaintiff never received the appropriate training for the Co-Manager position.  [Ex. 1, Pagonakis Dep. at 99, 205; Ex. 2, Pagonakis Decl. at 17; Ex. 7, Carpenter Decl. at 3].  Defendant has no record of Plaintiff ever receiving any training.  [Ex. 7, Hinkle Dep. at 41-42].

18.     In addition, Plaintiff was not afforded the same level of responsibility as other Co-Managers.  For example, unlike other Co-Mangers, Plaintiff was never trained on the cash registers or provided with keys to cash registers.  Similarly, Plaintiff's supervisors did not provide her with keys to unlock the Christiana Mall store.  [Ex. 7, Carpenter Decl. at 3 ; Ex. 9, Nelson Decl. at 6.; Ex. 2, Pagonakis Decl. at 17].

19.    From the time of her promotion to Co-Manager in June 2003 through late October/early November 2003, Plaintiff was afforded the same workplace accommodations that previously had been in place.  [Ex. 2, Pagonakis Decl. at 19; Ex. 4, Klancic Decl. at 4-5].

20.    Based on the directives of their superiors, Ms. Klancic and Ms. Bosley withdrew Plaintiff's workplace accommodations in early November 2003.  [Ex. 4, Klancic Decl. at 5].  For example, as of November 2003, Plaintiff was required, among other things, to change her schedule and work several evening shifts.  [Ex. 1, Pagonakis Dep. at 129-130; Ex. 2, Pagonakis Decl. at 20; Ex. 6, Klancic Dep. at 74-75; Ex. 7, Carpenter Decl. at 5].  Defendant also changed its managerial meetings from mornings to evenings, in an effort to prevent Plaintiff from being able to participate in the meetings (due to her inability to drive at night).  [Ex. 2, Pagonakis Decl. at 20; Ex. 7, Carpenter Decl. at 5].  Defendant also began to assign Plaintiff tasks that involved climbing.  [Ex. 2, Pagonakis Decl. at 20; Ex. 7, Carpenter Decl. at 5].  Defendant also frequently required Plaintiff to work from 8:00 a.m. until 4:00 p.m. with no breaks and assigned Plaintiff to work five to six days in a row.  [Ex. 2, Pagonakis Decl. at 20; Ex. 7, Carpenter Decl. at 5].

21.    On November 25, 2003, Plaintiff was informed by Tara Kessler, a Regional Human Resources Generalist for Defendant, that Defendant no longer would provide Plaintiff with reasonable accommodations for her disabilities because:  (a) *Defendant had lost Plaintiff's personnel file*, so there was no longer any validation of Plaintiff's disabilities or need for accommodations on file with Defendant; and (b) the individual that had previously authorized the accommodations allegedly did not have authority to do so.  [Ex. 1, Pagonakis Dep. at 126; Ex. 2, Pagonakis Decl. at 21; Ex. 10 (correspondence between Plaintiff, her supervisors, and Defendant's Human Resources Department)].

22.     During their November 25, 2003 meeting, Ms. Kessler asked Plaintiff if she had ever presented doctor's reports to verify her disabilities.  Plaintiff answered in the affirmative and promptly attempted to submit medical records to Ms. Kessler, who refused to accept them. Ms. Kessler then directed Plaintiff to contact Defendant's Human Resources Department within twenty-four hours to let them know of her need for accommodations, and to submit the necessary documentation to this Department.  [Ex. 2, Pagonakis Decl. at 22; Ex. 10].

23.     Plaintiff immediately contacted Defendant's Human Resources Department and Defendant's Corporate Department, as directed by Ms. Kessler, to determine to whom she needed to provide the relevant medical documentation.  Despite Plaintiff's best efforts, Defendant did not accept the information Plaintiff sought to submit, and continued to fail to reasonable accommodate Plaintiff's impairments well into December 2003.  [Ex. 2, Pagonakis Decl. at 23; Ex. 10].

24.     Due to Defendant's failure to reasonably accommodate her impairments, Plaintiff suffered from extreme fatigue, exhaustion and stress and was forced to take Family Medical Leave on December 9, 2003.  [Ex. 2, Pagonakis Decl. at 24].  Shortly thereafter, Plaintiff and her physician submitted medical documentation of her need for workplace accommodations.  [Ex. 2, Pagonakis Decl. at 24; Ex. 11 (correspondence from Plaintiff's physician to Defendant's Human Resources Department)].

25.     Plaintiff's physicians cleared her to return to work approximately two weeks later. Upon returning to work on December 23, 2003, Plaintiff provided Defendant with yet another letter from her treating physician that indicated that Plaintiff needed the following accommodations with her job:  (a) daylight work hours; (b) well lit work area; (c) no climbing; (d) no wet work place; (e) periodic breaks as provided by law; and (f) intermittent days off every

three to four days. *The letter also stated that representatives of Defendant should feel free to contact Plaintiff's treating physician should Defendant have any additional questions.* Defendant accepted this information and informed Plaintiff that she had provided all necessary information. [Ex. 10; Ex. 11].

26.    Upon Plaintiff's return to work on December 23, 2003, and continuing through January of 2004, Plaintiff's supervisors and co-workers treated her in a disparaging manner, including by making rude comments to Plaintiff in front of other employees. [Ex. 1, Pagonakis Dep. at 81, 109, 150-151; Ex. 7, Carpenter Decl. at 6]. For example, during this time period, the Christiana Store's Manager, Kristen Bosley, and another Co-Managers, Elise Zapp, would yell at other employees and chastise them whenever they saw them speaking with Plaintiff. [Ex. 7, Carpenter Decl. at 6; Ex. 9, Nelson Decl. at 4]. Ms. Bosley and Ms. Zapp made it clear to these individuals that they did not want them speaking with Plaintiff. [Ex. 7, Carpenter Decl. at 6]. Ms. Bosley and Ms. Zapp also made disparaging comments directly to Plaintiff during this time period, frequently criticizing Plaintiff for taking FMLA leave and humiliating Plaintiff by overriding Plaintiff's directions to subordinate employees. [Ex. 1, Pagonakis Dep. at 81, 91; Ex. 7, Carpenter Decl. at 6; Ex. 9, Nelson Decl. at 4].

27.    As a result of the disparate treatment she faced at work – including the harassing comments of her supervisors – and Defendant's continuing refusal to provide reasonable workplace accommodations, Plaintiff was forced to take additional Family and Medical Leave on February 3, 2004. [Ex. 2, Pagonakis Decl. at 27].

28.    Although Plaintiff made several efforts to discuss the accommodation issue with her supervisors during her second medical leave, Plaintiff's supervisors refused to communicate

with her.  [Ex. 1, Pagonakis Dep. at 162-163; Ex. 6, Klancic dep. at 54; Ex. 11 (*see* last page of this exhibit, which is a March 24, 2004 letter from Plaintiff to Ana Klancic)].

29.    Due to Plaintiff's extreme physical and mental fatigue and distress – resulting from Defendant's disparate treatment, failure to accommodate Plaintiff's known disabilities, and failure to communicate with Plaintiff from February 3, 2004 forward – Plaintiff's physicians extended her leave of absence on February 17, 2004.  [Ex. 2, Pagonakis Decl. at 29].

30.    As of March 18, 2004, Defendant still had not located Plaintiff's personnel file, still had not contacted Plaintiff's physician to discuss Plaintiff's medical conditions and potential accommodations, still had not communicated with Plaintiff about her request for workplace accommodations, and still had not made efforts to reasonably accommodate Plaintiff's disabilities.  [Ex. 2, Pagonakis Decl. at 30; Ex. 4, Klancic Decl. at 5-6; Ex. 7, Carpenter Decl. at 5].

31.    Because Plaintiff no longer could tolerate the hostile treatment she faced on account of her disability and because she no longer could mentally or physically tolerate working for Defendant without necessary accommodations, Plaintiff was forced to resign from her position with Defendant on March 18, 2004.  [Ex. 1, Pagonakis Dep. at 86, 166-167; Ex. 2, Pagonakis Decl. at 31].

## V.    Argument

### A.    Standard for Summary Judgment

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the burden of proving that no

genuine issue of material fact exists.  *See Matsushita Elec. Indus Co. v. Zenity Radio Corp.*, 475 U.S. 574 (1984).  "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."  *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 203 n.1 (3d Cir. 1995) (internal citations omitted).  Courts are to "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion."  *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).  A court should not make credibility determinations or weigh the evidence.  *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 150 (2000); *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992) ("Credibility determinations are the province of the factfinder").  In the context of discrimination cases, summary judgment should be approached with special caution because of the difficulty of proving discriminatory intent and disparate treatment.  *See Chauhan v. M. Alfieri Co.*, 897 F.2d 123, 127 (3d Cir. 1990) (noting the difficulties in providing discriminatory intent and reversing district court's grant of summary judgment in favor of employer because of inconsistencies contained in employer's explanation for its actions).  *See also Regan v. Grill Concepts-D.C., Inc.*, 338 F. Supp. 2d 131, 133 (D.D.C. 2004).

### B.    Relevant Legal Framework

Claims brought under the ADA and FMLA are analyzed under the burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See*, *e.g.*, *Lawrence v. Nat'l Westminster Bank*, 98 F.3d 61, 68 (3d Cir. 1996) (ADA cases); *Schlifke v. Trans World Entertainment Corp.*, Civ. No. 05-620-SLR (D. Del. Mar. 27, 2007) ("Retaliation claims under the FMLA are analyzed under the burden shifting framework of

*McDonnell Douglas Corp.*") (citations omitted).  Under the *McDonnell Douglas* framework, a plaintiff first must establish a *prima facie* case of unlawful discrimination.  If, as here, the plaintiff makes a *prima facie* showing of discrimination, the burden shifts to defendant to establish a legitimate, nondiscriminatory reason, for its actions.  *McDonnell Douglas Corp.*, 411 U.S. at 802.  If the defendant carries this burden, the presumption of discrimination drops from the case and the plaintiff must "cast sufficient doubt" upon the defendant's proffered reasons to permit a reasonable factfinder to conclude that the reasons are fabricated.  *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1072 (3d Cir. 1996) (*en banc*).

Here, Defendant has not articulated with sufficient clarity or specificity where, within this legal framework, Plaintiff's ADA and FMLA claims allegedly are lacking.  Defendant offers only the following rudimentary statements: (1) "Plaintiff's ADA Accommodation Claim Fails," *see* Motion at 10; (2) "Plaintiff Was Not Constructively Discharged," *see* Motion at 16; and (3) "Plaintiff's FMLA Claim is Facially Frivolous," *see* Motion at 9.  These bare assertions find no support in fact or law and need not detain the Court long.  The record in this case demonstrates that Plaintiff has established a *prima facie* case of discrimination under both the ADA and FMLA.  At the very least, the record demonstrates that there are disputed material facts precluding summary judgment in favor of Defendant.  And, although Defendant has not articulated a legitimate, nondiscriminatory reason for its actions vis-à-vis Plaintiff (apparently because Defendant believes it has done no wrong here), the record in this case – as well as Defendant's stalwart refusal to satisfy is discovery obligations – demonstrates that Plaintiff has established that any ostensible "legitimate" explanations for Defendant's actions are pretextual.

C.    **Plaintiff Has Established a *Prima Facie* Case of ADA Discrimination and Genuine Issues of Disputed Fact Preclude Summary Judgment.**

Defendant asserts in the Motion that it is entitled to judgment with regard to Plaintiff's ADA claim.[4]  The essence of Plaintiff's ADA claim found at Count I of the Complaint is that Defendant violated the ADA by (1) failing to accommodate Plaintiff's known disabilities, and (2) constructively terminating Plaintiff from her employment with Defendant.[5]  In order for a plaintiff to establish a *prima facie* case of discrimination under the ADA, the plaintiff must show that:  (1) she is a disabled person within the meaning of the ADA; (2) she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) she has suffered an otherwise adverse employment action.  *Taylor v. Phoenixville School Dist.*, 184 F.3d 296, 306 (3d Cir. 1999) (finding genuine factual disputes required trial in ADA case).  As relevant here, "[a]dverse employment decisions in this context include refusing to make reasonable accommodations for a plaintiff's disabilities."  *Taylor*, 184 F.3d at 305 ("Discrimination under the ADA encompasses not only adverse actions motivated by prejudice and fear of disabilities, but also includes failing to make reasonable accommodations for a plaintiff's disabilities"); *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391 (2002) ("[T]he ADA says that 'discrimination' includes an employer's '*not making reasonable accommodations* to the known physical or mental limitations of an otherwise qualified employee'") (emphasis added) (internal citations omitted).

---

[4]    Defendant contends in the Motion that Plaintiff has asserted a "hostile work environment" claim under the ADA in her Complaint.  This contention demonstrates Defendant's fundamental misunderstanding of this case, as Plaintiff has not asserted such a claim here.

[5]    Defendant has not, in the Motion, addressed or moved for summary judgment with regard to Plaintiff's ADA retaliation claim (found at Count III of the Complaint and brought pursuant to subsection 12203(a) of the ADA).  Accordingly, that claim stands, and so Plaintiff will not address Count III of the Complaint herein.

Defendant's undeveloped statements above, when viewed in a light most favorable to *Defendant*, amount to an argument that Plaintiff's ADA claim should fail because Plaintiff has not satisfied the second and third elements required to establish a *prima facie* case of disability discrimination. Defendant inartfully has postulated in the Motion that: (1) Plaintiff was not qualified to perform the essential functions of the position of Co-Manager, and (2) even if she were so qualified, Plaintiff suffered no adverse employment decision because Defendant capitulated to Plaintiff's request for workplace accommodations at all times relevant. Defendant's asserted defense misses the mark – as there is ample evidence in the record sufficient to create a dispute of material facts with regard to both issues.[6]

### 1. There is a Dispute of Fact as to Whether Plaintiff Could Perform Essential Functions of the Job.

With regard to the second element of the prima facie case, Defendant argues that Plaintiff was not qualified for the position of Co-Manager because she allegedly could not "attend work as scheduled," *see* Motion at 10, which allegedly precluded Plaintiff from being able to open and close the store and from being present in the store for forty hours a week, *see* Motion at 4-5. This, Defendant asserts, supports a finding that Plaintiff could not perform the essential functions of her position and that her requested accommodations were unreasonable as a matter of law.[7]

Defendant's argument fails for several reasons: (1) there is a dispute of material fact as to whether Plaintiff could perform the essential functions of the Co-Manager position; (2) the cases relied upon by Defendant in support of its position are inapposite; (3) there is a dispute of

---

[6] Because Defendant has not disputed that Plaintiff satisfies the first element of the *prima facie* case – *i.e.*, Defendant has not disputed that Plaintiff was disabled within the meaning of the ADA, and/or that Defendant regarded Plaintiff as disabled within the meaning of the ADA – this element need not be addressed herein.

[7] That Defendant would advance this "essential functions" argument is quite puzzling, given that Defendant has asserted that it never withdrew Plaintiff's workplace accommodations.

material fact as to whether Plaintiff's requested accommodations were reasonable; and (4) there is a dispute of material fact as to whether Defendant provided Plaintiff with the requested accommodations and as to whether Defendant constructively discharged Plaintiff.

### a. Plaintiff Was Qualified to Perform the Essential Functions of the Co-Manager Position.

Defendant's only "evidence" in support of its "essential functions" argument is a bare assertion made by one of Defendant's current employees, Jennifer Hinkle. Ms. Hinkle asserts in her declaration that the essential functions of the Co-Manager position are (1) to work in the store 40 hours a week, (2) to be able to open and close the store, and (3) to have regular attendance. *See* Motion at 4-5. Ms. Hinkle does not cite to any *actual* policy – *i.e.*, document – that supports her assertion. Nor could Ms. Hinkle do so, as Defendant has not produced any such document in discovery in this action. Defendant cannot seriously believe that it is entitled to judgment as a matter of law based only upon the self-serving declaration of one of its current employees.

Contrary to Defendant's wholly unsupported assertion, there in ample evidence in the record demonstrating that Plaintiff was qualified at all times relevant to perform the essential functions of the Co-Manager position into which she was promoted by her District Manager, Ana Klancic (and in any event, the record demonstrates that there is a genuine dispute of material fact as to this issue). At the outset, Defendant's assertion that one of the "essential" functions of the Co-Manager position at the Christiana Mall store is to be able to open and close the store is belied by undisputed evidence demonstrating that Defendant never trained Plaintiff to open and close the store and never provided Plaintiff with keys to the store. As Plaintiff testified in her deposition:

Q:    Were you ever trained to be a Co-Manager?

17

A:    No, Kristen even said she asked Ana and Ana told her she didn't have to train me.

Q:    Were you ever – is Kristin Kristin Bosley?

A:    Yes.

Q:    And Ana is Ana Klancic?
A:    Yes.

Q:    Were you ever trained to be a key holder?
A:    No.

Q:    Did you ever become a key holder?
A:    No.

Ex. 1, Pagonakis Dep. at 205.  *See also* Ex. 2, Pagonakis Decl. at 99, 100, 205 (noting that Plaintiff was not a key holder and never received training for the Co-Manager position);  Ex. 7, Carpenter Decl. at 3 (noting that Plaintiff was never trained for her position of Co-Manager and that Plaintiff was made a key holder); Ex. 9, Nelson Decl. at 6 (noting that, unlike other Co-Managers, Plaintiff was not provided with a full set of store keys). Defendant's own witnesses admitted that they could not dispute this lack of training, as they were not in possession of any documentation noting that Plaintiff had been trained.[8]  *See* Ex. 5, Zapp Dep. at 26 (wherein Ms. Zapp stated that "I don't remember" whether Plaintiff was ever trained as a Co-Manager); Ex. 8, Hinkle Dep. at 42-43 (wherein Ms. Hinkle testified that she had no evidence that she could produce that would prove that Plaintiff had been trained).  If this was truly an "essential" element of the Co-Manger position, shouldn't Defendant have provided Plaintiff with the training and tools necessary to perform this function?

The testimony of Plaintiff's former supervisor, Ana Klancic – the individual who promoted Plaintiff into the Co-Manager position – similarly refutes Defendant's "essential"

---

[8]    Moreover, as discussed *infra* Section V(E) of this Opposition, because Defendant has failed to produce Plaintiff's personnel file in this action, stating only that they have "lost" the file, Plaintiff is entitled to an inference in support of her position on this issue.

function argument.  Ms. Klancic has testified that Plaintiff was an exemplary employee who was

able to able to perform the essential functions of the position of Co-Manager:

> Q:    Paula was doing a good job for you, wasn't she?
>
> A:    Yes.
>
> Q:    You liked Paula working there?
>
> A:    Yes.
>
> …
>
> Q:    Okay, you mentioned that you thought Paula was a good worker.  She was pretty much able to do every function of her job, wasn't she?
>
> A:    Yes, except climb ladders or lift heavy things.
>
> Q:    And a co-manager's job isn't just to – she's not a ladder climber, right?
>
> A:    Correct.
>
> Q:    I mean, that might be incidental to the job, but it's not the main function of the job, right?
>
> A:    Correct.
>
> Q:    So if she can't climb a ladder, she could still be a functional and effective co-manager, is that fair to say?
>
> A:    Absolutely, yes.

Ex. 6, Klancic Dep. at 114-115.  Who would be in a better position to opine as to whether

Plaintiff could perform the essential functions of a Co-Manager than the individual who

promoted Plaintiff into the position and who regularly supervised Plaintiff and assigned her

tasks.[9]

---

[9]    Significantly, Plaintiff testified in her deposition that after being promoted into the position of Co-Manager, she did, in fact, open and close the Christiana Mall store when charged with that task.  *See* Ex. 1, Pagonakis Dep. at 112-113.  Because Plaintiff did satisfy this "essential" function of the Co-Manager position, Defendant's argument is meritless.  Moreover, Ana Klancic testified in her deposition that, after Plaintiff's accommodations were withdrawn in November 2003, Plaintiff did, in fact, work at night and did, in fact, close the store.  *See* Ex. 6, Klancic Dep. at 95.

With regard to Defendant's assertion that Plaintiff was required, as a Co-Manager to be in the store forty hours a week and to have regular attendance, Defendant similarly has failed to demonstrate that these were, in fact, essential functions of the Co-Manager position at the Christiana Mall store. Defendant also has failed to present any evidence demonstrating that Plaintiff did not, in fact, fulfill these purported requirements. In contrast, Plaintiff has presented evidence demonstrating that she was a top performer who was qualified to perform the essential functions of the Co-Manager position, even with her requested accommodations in place. *See* Ex. 6, Klancic Dep. at 114-115. Plaintiff also has presented evidence that did work a forty-hour work week in the Christiana Mall Store after her accommodations were withdrawn, that she did report to work every day as scheduled, and that she did open the store and work at night when so tasked. *See* Ex. 6, Klancic Dep. at 95, 114-115; Ex. 2, Pagonakis Decl. at 16; Exhibit 1, Pagonakis Dep. at 112-113.

### b. The Cases Relied Upon By Defendant Are Inapposite.

Defendant relies upon several cases – mostly from outside of the Third Circuit – to argue that because Plaintiff allegedly could not report to work as scheduled, she was unqualified to perform the essential functions of the job of Co-Manager. *See* Motion at 10-11. Those cases have no application to the present facts, as each case involved employees who were regularly absent from work. The courts in those cases found that attendance is a fundamental prerequisite to job qualification and that an employee cannot be accommodated for excessive absenteeism. As noted above, the evidence in the record demonstrates that Plaintiff was at work each day as scheduled. At the very least, there is a genuine dispute of material fact on this issue precluding summary judgment.

### c. There is a Dispute of Fact as to Whether Plaintiff's Requested Accommodations Were Reasonable.

Defendant also appears to argue that Plaintiff was not qualified to perform the essential functions of her position with Defendant because her requested accommodations were, as a matter of law, unreasonable. Specifically, Defendant argues that the only way it could provide Plaintiff with her accommodations was to "change the job responsibilities of the Co-Manager position – which it was not legally obligated to do under the ADA." *See* Motion at 11. Defendant also argues that the requested accommodations were unreasonable because "no other Co-Manager in her district was given such accommodations." *Id.* Defendant's argument ignores the significant case law that holds that providing a flexible work schedule is not, as a matter of law, an unreasonable accommodation. Defendant's argument also ignores the fact that – if, as Defendant asserts, Plaintiff's requested accommodations were unreasonable – Defendant was under an obligation to work with Plaintiff to attempt to find other suitable accommodations.

Under the ADA, an employer "discriminates" against a qualified individual with a disability when the employer does not make reasonable accommodations to the known physical or mental limitations of the individual "unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of its business." *Barnett*, 535 U.S. at 398 (citing 42 U.S.C. § 12112(b)(5)(A)). As relevant here, a "reasonable accommodation" under the ADA may include *job restructuring*, *part-time or modified work schedules*, appropriate adjustment or modifications of training materials or policies, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B) (emphasis added).

The Third Circuit holds that "on the issue of reasonable accommodation, the plaintiff bears only the burden of identifying an accommodation, the costs of which, facially, do not

21

clearly exceed its benefits." *Skerski v. Time Warner*, 257 F.3d 273, 284 (3d Cir. 2001), citing

*Walton v. Mental Health Ass'n of Southeastern Pa.*, 168 F.3d 661 (3d Cir. 1999). If the plaintiff

satisfies her burden, the defendant then has the burden to demonstrate that the proposed

accommodation creates an undue hardship for it." *Id*. *See also* 42 U.S.C. § 12111(10)(A). The

ADA defines "undue hardship" as an "action requiring significant difficulty or expense, when

considered in light of [a series of factors]." *Id*.

As noted above, Defendant has argued that Plaintiff's requested accommodations were

unreasonable because: (1) no other Co-Manager in Ms. Klancic's district was given such

accommodations, *see* Motion at 11; and (2) Plaintiff's requested accommodations allegedly

resulted in other managers having to work more often or longer shifts to cover for Plaintiff, *see*

Motion at 12.[10] With regard to the latter argument, Defendant has presented no evidence that

any other Co-Mangers were forced to work "more often" or "longer shifts" to "cover for

Plaintiff" based upon Plaintiff's alleged accommodations. In contrast, Ms. Klancic testified

during her deposition that, because there was always more than one manager working at the

Christiana Store at any given time, there was no need for additional staff to "cover" for Plaintiff.

*See* Ex. 6, Klancic Dep. at 101-102. Ms. Klancic also testified that, if the "schedule would work

for the store," then store management would be able to provide such an accommodation. *See* Ex.

6, Klancic Dep. at 38-39, 41-42. Why would Ms. Klancic have promoted Plaintiff into the

---

[10]    Defendant also appears to argue, relying on a string of district court cases from other judicial circuits, that Plaintiff's requested accommodations were unreasonable as a matter of law because "commuting to and from work is not part of the work environment that an employer is required to reasonably accommodate." *See* Motion at 11-12. This argument demonstrates, once again, Defendant's fundamental misunderstanding of the essential facts and issues in this case, as Defendant can present no evidence that Plaintiff was unable to be at work when scheduled after Defendant withdrew Plaintiff's workplace accommodations. In any event, a more flexible work schedule was not the only accommodation Defendant withdrew – so this argument simply cannot save the day for Defendant.

position of Co-Manager in June 2003, and kept her in that position through November 2003, if Plaintiff's schedule did not "work for the store"?

With regard to Defendant's former argument – that it was not required to provide Plaintiff with her suggested accommodations because no other Co-Manager in Ms. Klancic's district was so accommodated – this argument fails as a matter of fact and law. At the outset, Ms. Klancic testified in her deposition that no other Co-Manager needed such an accommodation. *See* Ex. 6, Klancic Dep. at 116. More importantly, the fact that Plaintiff might have been the only Co-Manager to receive such accommodations – and therefore might have received "preferential" treatment – does not in and of itself release Defendant from having a legal obligation to provide the accommodation. As the Supreme Court has stated, "[w]hile linguistically logical, this argument fails to recognize what the [ADA] specifies, namely, that preferences will sometimes prove necessary to achieve the [ADA's] basic equal employment opportunity goal," and that "[b]y definition, any special 'accommodation' requires the employer to treat an employee with a disability differently, *i.e.*, preferentially." *Barnett*, 535 U.S. at 397. Moreover, the fact that the difference in treatment "may violate an employer's disability neutral rule" (such as Defendant's purported rule that Co-Managers must work 40 hours a week in the store and/or be able to open and close a store) cannot by itself place the accommodation beyond the [ADA's] potential reach because:

> Were that not so, the "reasonable accommodation" provision could not accomplish its intended objective. Neutral office assignment rules would automatically prevent the accommodation of an employee whose disability-imposed limitations require him to work on the ground floor. Neutral "break-from-work" rules would automatically prevent the accommodation of an individual who needs additional breaks from work, perhaps to permit medical visits. Neutral furniture budget rules would automatically prevent the accommodation of an individual who needs a different kind of chair or desk. Many employers will have neutral rules governing the kinds of actions most needed to reasonably accommodate a

worker with a disability. See 42 U.S.C. § 12111(9)(b) (setting forth examples such as "job restructuring," "part-time or modified work schedules," "acquisition or modification of equipment or devices," "and other similar accommodations"). Yet Congress, while providing such examples, said nothing suggesting that the presence of such neutral rules would create an automatic exemption. Nor have the lower courts made any such suggestion.

*Barnett*.  535 U.S. at 397-98.  Relevant Third Circuit case law similarly runs contrary to Defendant's argument.  *See*, *e.g.*, *Skerski*, 257 F.3d at 285 (3d. Cir. 2001) ("Time Warner's defense in this case has been, in essence, that it would have been 'inconvenient' for it to make the adjustments needed to retain Skerski in the position he previously had.  However, the ADA was enacted to compel employers to look deeper and more creatively into the various possibilities suggested by the employee with a disability."); *Shapiro v. Township of Lakewood*, 292 F.3d 356 (3d Cir. 2002) (reversing grant of summary judgment in favor of employer where district court had based decision on sole ground that employee's request for accommodation did not comply with employer's neutral policy regarding job transfers).

Finally, to the extent Defendant has established that Plaintiff's request for a somewhat flexible schedule was unreasonable as a matter of fact or law (Defendant has not), Defendant's argument still fails because Defendant was legally obligated to communicate and work with Plaintiff to determine whether alternative accommodations were possible – and the evidence in the record here demonstrates that Defendant made no such efforts.  The Third Circuit has repeatedly held that an employer has a duty under the ADA to engage in an "interactive process" of communication with an employee requesting an accommodation so that the employer will be able to ascertain whether there is in fact a disability and, if so, the extent thereof, and thereafter be able to assist in identifying reasonable accommodations where appropriate.  *Williams*, 380 F.3d at 771; *Mengine v. Runyon*, 114 F.3d 415, 420 (3d Cir. 1997).  The Third Circuit also has

held that "both employer and employee 'have a duty to assist in the search for appropriate reasonable accommodation and to act in good faith.'"    *Williams*, 380 F.3d at 771, citing *Mengine*, 114 F.3d at 420.  Here, Defendant meets neither duty.

The evidence in the record here establishes that Defendant made absolutely no effort to work with Plaintiff to find "appropriate reasonable accommodations."  Rather, the evidence demonstrates that Defendant simply stymied Plaintiff's efforts to engage in the interactive process by refusing to communicate about the issue with her.  There is ample evidence in the record demonstrating that Plaintiff attempted to communicate – both orally and in writing – with her Store Manager and her District Manager regarding her accommodations and lack thereof between February 3, 2004 and March 18, 2004 and that these individuals simply ignored Plaintiff's communications.  *See* Ex. 1, Pagonakis Dep. at 91, 162-163, 166; Ex. 10, Ex. 11 (March 24, 2004 letter from Plaintiff to Ana Klancic).

Courts within the Third Circuit presented with similar circumstances routinely have denied employers' motions for summary judgment.  *See*, *e.g.*, *Emory v. Astrazeneca Pharmaceuticals LP*, Civ. No. 02-1466-SLR, 2006 U.S. Dist. LEXIS 2533 (D. Del. Jan. 25, 2006) (denying defendant's motion for summary judgment as to plaintiff's failure to accommodate claim); *Armstrong v. Burdette Tomlin Memorial Hospital*, 438 F.3d 240 (3d Cir. 2006); *Skerski*, 257 F.3d at 285-87 (reversing grant of summary judgment to employer and finding existence of genuine issue of material fact as to whether employer provided employee with a "reasonable accommodation" under the ADA).

This Court's recent decision in *Emory v. Astrazeneca Pharmaceuticals* is on all fours with the present case.  In *Emory*, an employee with cerebral palsy and paralysis on his right side who had worked for his employer for over twenty-seven years was denied a promotion into a

supervisory position.  The employee alleged, as Plaintiff has done here, that Defendant had not

offered to train him for the supervisory position and this had put him at a disadvantage.  This

Court denied the employer's summary judgment motion on Plaintiff's ADA failure to

accommodate claim because:

> [r]eviewing the current record and construing the facts in the light most
> favorable to plaintiff, the court concludes that a jury could reasonably find
> for plaintiff on his claim of failure to accommodate. As noted above, the
> question of whether plaintiff is disabled is a question to be decided by the
> jury. Additionally, Ms. Gourdin, plaintiff's instructor at Sylvan Learning
> Center, recommended accommodations that would enable plaintiff to
> operate in a supervisory position, demonstrating that plaintiff could
> perform the essential functions of the position if given the appropriate
> accommodations. Finally, a jury could find that defendant had notice that
> plaintiff was disabled and that it failed to accommodate him or that it
> failed to participate in an interactive process to find appropriate
> accommodations. As to the interactive process, a jury could reasonably
> find that defendant lacked good faith in finding accommodations,
> particularly if, as plaintiff alleges, Mr. Keane and Mr. Hampel thought,
> without interaction, that such accommodations would be a waste of time.

*Emory*, 2006 U.S. Dist. LEXIS 2533, at *12-13.  Likewise here, Plaintiff's physician provided

Defendant with recommended accommodations that would enable Plaintiff to operate in the Co-

Manager position, demonstrating that Plaintiff could perform the essential functions of the Co-

Manager position if given appropriate accommodations.  ***Plaintiff's physician even invited***

***Defendant to contact him to discuss Plaintiff's condition and his suggested accommodations***.

And here, as in *Emory*, as to the interactive process, a jury could reasonably find that Defendant

lacked good faith in finding accommodations – or at least discussing whether any suitable

accommodations existed – particularly if, as Plaintiff alleges, Defendant failed to properly train

her for the position of Co-Manager and refused to respond to Plaintiff's attempts to communicate

about this issue.  Clearly then, Defendant's Motion should be denied as to Plaintiff's reasonable

accommodation claim.  *See*, *e.g.*, *Taylor*, 184 F.3d at 317-320 (reversing grant of summary

judgment in favor of employer and finding that a reasonable jury could conclude that employer had made no effort to help employee find reasonable accommodations and was responsible for the breakdown in the process).

> **2.** **There is a Dispute as the Whether Defendant Took an Adverse Employment Action Against Plaintiff**

Defendant apparently believes that Plaintiff has failed to establish the *third* and final prong of the *prima facie* showing. Specifically, Defendant has argued that Plaintiff suffered no adverse employment action because (1) it is undisputed that it continued to provide Plaintiff with workplace accommodations between November 2003 and the termination of Plaintiff's employment in March 2004 and, therefore, (2) it is necessarily undisputed that Defendant did not constructively discharge Plaintiff. As set forth below, the evidence in the record permits a finding that Plaintiff has satisfied this third and final prong. At the very least, the evidence in the record demonstrates that there are genuine issues of material fact precluding summary judgment.

> **a.** **Failure to Accommodate**

Defendant asserts that Plaintiff suffered no adverse employment action because there allegedly is no evidence to support Plaintiff's reasonable accommodation claim other than "her own conclusory, after-the-fact allegation that Express failed to accommodate her...." This bald assertion demonstrates the senselessness and disingenuous nature of Defendant's Motion, as the record is replete with evidence supporting Plaintiff's claim that Defendant withdrew her workplace accommodations in November 2003 and failed to reinstate them prior to the termination of Plaintiff's employment in March 2004.

Defendant need look no further than the "evidence" it cites in support of its position to recognize the futility of its position. The only evidence Defendant points to in support of its assertion that it provided Plaintiff with workplace accommodations – though those

accommodations were allegedly unreasonable – from November 2003 through March 2004 is one sentence in the declaration of one of its current employees, Jennifer Hinkle.  Plaintiff, in contrast, can point to several different sources of evidence that establish that Defendant ceased her workplace accommodations.

When asked in her deposition whether she could point to any evidence to establish that the accommodations had been provided in this time frame, Ms. Hinkle admitted that she had no evidence supporting her belief other than  "conversations" she allegedly had with Ana Klancic and Tara Kessler approximately three years earlier:

> Q:    [D]o you know of any evidence that she – that Paula's – accommodations were continued through – past December 2003?
>
> A:    You know, in – in conversation that I had with both Tara and Ana ongoing after that time, both of them would – you know because I continued to follow up on this – confirm to me in every conversation that they were continuing to accommodate her restrictions.
>
> Q:    Okay.  But there's nothing in writing that you know of?
>
> A:    No.

Ex. 8, Hinkle Dep. at 42.   Ms. Klancic's own sworn testimony, in turn, expressly rebuts Ms. Hinkle's bare assertion:

> Q:    Do you know if human resources ultimately made an accommodation for Paula?
>
> [Defense counsel]:     I'm going to object.  She's already answered to question.
>
> A:    No, they did not.
>
> Q:    They didn't?
>
> A:    No.
>
> Q:    All right.  And that would be despite the medical documentation that we know she provided, is that right?

A:    That's correct.

Ex. 6, Klancic Dep. at 121.  *See also* Ex. 4, Klancic Decl. at 5-6 (stating that Plaintiff's workplace accommodations were withdrawn in November or December 2003 and that these accommodations were not reinstated prior to the termination of Plaintiff's employment with Defendant in March 2004).  Ms. Klancic's version of the events is supported by Plaintiff's own deposition testimony, as well as the sworn statement of another former employee of Defendant:

Q:    So from November 25, 2003 until December 8, 2003 you only worked the daylight hours and they continued to accommodate you during that period right?

A:    No.

Q:    What is it your testimony is?

A:    There were some times that I was assigned nights.
…

Q:    Did Tara tell you that during the accommodation process, during the review process, that they would accommodate your restrictions?

A:    No, she said she would not accommodate anything, there was nothing she could do.

Q:    So you went on an FMLA leave during the accommodation review?

A:    No, I kept working.

Ex. 1, Pagonakis Dep. at 129-131.  Plaintiff further testified:

Q:    How else did they not accommodate you during that period?

A:    They didn't give me breaks on a regular basis.  If I needed to go to the bathroom … I was denied going to the bathroom.

Q:    You weren't allowed to go to the bathroom?

A:    Wasn't allowed to go to the bathroom.

Q:    What other accommodations were you denied?

> A:    Some lunches, wasn't even allowed to stop for lunch, or it would be so late in the day that I have a head injury, you're supposed to eat at regular intervals or it's not healthy for your head, normal people get lunch breaks.
>
> Q:    What other ways were you not accommodated during this time period?
>
> A:    Climbing, I told you they asked me to do higher levels of work and I was told to go out and do them on the sales floor in the middle of the store….The scheduling, sometimes  my day off would be Sunday, Monday and then I would work the whole rest of that week, the weekend all the way up until Friday, Saturday.

Ex. 1, Pagonakis Dep. at 153-154.  *See also* Ex.7, Carpenter Decl. at 5 (stating, among other things, that "[s]tarting in the fall of 2003 and continuing through the winter of 2003 into early 2004, Paula's supervisors stopped accommodating her known disabilities and medical conditions").  There can be no doubt that there is a dispute of material fact on this issue.

### b.    Constructive Discharge

Defendant also argues that Plaintiff has not satisfied the third element of her *prima facie* case because Plaintiff allegedly cannot establish that she was constructively discharged.  *See* Motion at 16.  In the Third Circuit, to establish a constructive discharge, a plaintiff is required to show that her employer "knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign."  *Goss v. Exxon Office Sys. Co.*, 747 F.2d 885, 888 (3d Cir. 1984). "Intolerability . . . is assessed by the objective standard of whether a 'reasonable person' in the employee's position would have felt compelled to resign-that is, whether [she] would have had no choice but to resign."  *Connors v. Chrysler Financial Corp.*, 160 F.3d 971, 976 (3d Cir. 1998) (internal citations omitted).

Here, a jury reasonably could find that Plaintiff was constructively discharged – *i.e.*, that Defendant knowingly permitted conditions of discrimination of employment such that a

reasonable person in Plaintiff's position would have felt she had no choice but to resign.[11]

Plaintiff testified in her deposition that she was compelled to resign her position in March 2004

because she could no longer tolerate the working conditions she would have faced had she

returned to work:

> Q:    I'm not asking why, I'm saying is the date March 18th, 2004 when you resigned?
>
> A:    March 18, 2004 I was supposed to go back to work after my medical leave was over and I physically, mentally, emotionally could not return to work under the circumstances I could not return to work physically, mentally, emotionally.

Ex. 1, Pagonakis Dep. at 86.  Plaintiff elaborated on the severe nature of the work conditions

later in her deposition:

> Q:    The answer is you didn't talk to anybody about the resignation, right?
>
> [Objection to form, you can answer]
>
> Q:    Why didn't you attempt to return to work and continue to work as you did for the month before your leave?
>
> A:    Because it was killing me.  Because after all these months I was facing going back to work and receiving the same harassment, the same non-help with my disability accommodations, the same run-around … How many times would you keep going back and trying and being beat to a pulp across the board to the point where you weren't even a functional human being.  Would you stand in line and raise your hand and say, yes, give it to me again.

Ex. 1, Pagonakis Dep. at 166-167.  Plaintiff's own view of the horrid working conditions she

faced is supported by sworn statements made by her then co-workers.  *See* Ex. 9, Nelson Decl. at

5 ("It was clear to me that the Christiana store's management made efforts to ostracize Paula and

create an unwelcome environment for Paula.  Based upon my observations, Ms. Bosley and other

---

[11]    The only "undisputed" evidence cited by Defendant in support of its position is that Plaintiff submitted a letter of resignation.  That letter is of no consequence, as several other undisputed facts demonstrate that Plaintiff was forced to resign because the accommodations issue still had not been resolved.

Co-Managers were successful in creating an undesirable and unfriendly work environment for Paula"); Ex. 7, Carpenter Decl. at 6 ("Paula's supervisors also started to treat Paula in a disparaging and hostile manner in the fall and winter of 2003, including making rude comments to her in front of myself and other employees. During this time period, one of the Christiana Store's Co-Managers, Elise O'Neill, would yell at me and chastise me whenever she saw me speaking with Paula. Ms. O'Neill made it very clear to me from her words and actions that she did not want me speaking with Paula. Ms. O'Neill also made disparaging comments to Paula during this time period. It is my firm belief that Paula's supervisors treated her unfairly. I don't understand why this is, because Paula was an excellent employee whom I respected and enjoyed working with and for.").

### D.    Plaintiff Has Established A *Prima Facie* Case of FMLA Discrimination.

Defendant attempts to have the Court dismiss Plaintiff's FMLA claim found at Count III of the Complaint by asserting – without any legal or factual discussion – that the claim is "frivolous" and "puzzling" and fails as a matter of law. *See* Motion at 9. Contrary to Defendant's bare assertion, Plaintiff has established a *prima facie* case of discrimination/retaliation under FMLA and her claims at Count III of the Complaint should not be dismissed.

The dual purposes of FMLA are to "balance the demands of the workplace with the needs of families" and "to entitle employees to take reasonable leave for medical reasons." 29 U.S.C. § 2601(b)(1), (2). To accomplish these goals, FMLA contains two distinct types of provisions. The first, a series of prescriptive substantive rights for eligible employees, is often referred to as the "entitlement" or "interference" provisions. *See Churchill v. Star Enters.*, 183 F.3d 184, 192 (3d Cir. 1999). The second, "discrimination" or "retaliation" provisions, provide protection

against discrimination based on the exercise of FMLA rights. *See* 29 U.S.C. § 2615(a)(1), (2); 29 C.F.R. § 825.220(c) ("An employer is prohibited from discriminating against employees . . . who have used FMLA leave."). Plaintiff's FMLA claim at Count III of the Complaint invokes the "discrimination" or "retaliation" provisions of FMLA. The essence of Plaintiff's FMLA claim is that Defendant's failure to accommodate Plaintiff's disabilities – and Defendant's disparate treatment of Plaintiff – after she returned from her first disability leave, and after she went out on her second disability leave, constituted unlawful discrimination and retaliation in violation of FMLA's discrimination/retaliation provisions.

As noted above, FMLA retaliation claims are analyzed under the burden-shifting framework of *McDonnell Douglas Corp*. To establish a prima facie case of retaliation under the FMLA: a plaintiff must demonstrate that (1) she had a medical condition; (2) this condition was a serious health condition; (3) Plaintiff gave appropriate notice of her need to be absent from work; (4) Plaintiff was not provided with workplace accommodations upon her return from her leave; and (5) Plaintiff's taking leave was a motivating factor in Defendant's decision not to reinstate Plaintiff's workplace accommodations. *Bearley v. Friendly Ice Cream Corp.*, 322 F. Supp. 2d 563, 571 (M.D. Pa. 2004); *Callison v. City of Phiadelphia*, 430 F.3d 117, 119 (3d Cir. 2005).

Here, as best as Plaintiff can ascertain, Defendant disputes only the fourth element of the *prima facie* case – *i.e.*, Defendant disputes that it ceased providing Plaintiff with workplace accommodations. Plaintiff has already demonstrated that there is a genuine dispute of material fact on this issue. *See infra* Section V(C)(2). Plaintiff's position is bolstered by the fact that she was treated in a hostile and disparate fashion upon her return from her first disability leave. *See*

*infra* Section V(D).    Finally, Plaintiff's position is supported by specific statements her supervisors made to her after she returned from her first FMLA disability leave:

Q:    Did anybody make any comments about your FMLA leaves?

A:    Yes.

Q:    Who?

A:    Kristin Bosley.

Q:    What did she say?

A:    She made offhanded comments under her breath and to other people about she would mimic me and make comments that indicated she questioned the validity.

Q:    Of your leave request or of your accommodation request.

A:    All of it.
…

Q:    So you returned to work, what was said to you about your FMLA leave?

A:    Offhand comments.  I don't know that I can recall exactly at this time what people said, but there were just snide comments made to me and to other employees.
…

Q:    Who made these comments?

A:    Elise [Zapp], Ana [Klancic], Kristin [Bosley].

Ex. 1, Pagonakis Dep. at 81, 84, 89, 91.  Because there is a dispute as to whether Defendant ceased its provision of accommodations to Plaintiff and because Plaintiff can point to evidence that she faced disparate – if not disparaging – treatment upon her return from her FMLA leave, summary judgment should be denied as to Count III of the Complaint.

**E.     Plaintiff Has Established Pretext – Defendant's Position is Subject to an Adverse Inference Based on Defendant's Failure to Fulfill its Discovery Obligations.**

Where, as here, a plaintiff makes a prima facie showing of discrimination under the ADA or FMLA (or, at the very least, demonstrates that genuine issues of material fact exist precluding summary judgment), the burden shifts to the defendant to establish a legitimate, nondiscriminatory reason, for its actions. *McDonnell Douglas Corp.*, 411 U.S. at 802. As previously noted, Defendant has not articulated a legitimate, nondiscriminatory reason for its actions vis-à-vis Plaintiff (apparently because Defendant believes it has done no wrong here). Assuming, *arguendo*, that Defendant were to argue (or the Court were to find) that Defendant failed to provide Plaintiff with the requested workplace accommodations and that Defendant (or the Court) could articulate a legitimate business reason for its decision, Plaintiff then would have the burden to, "cast sufficient doubt" upon Defendant's proffered reasons to permit a reasonable factfinder to conclude that the reasons are fabricated. *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1072 (3d Cir. 1996) (*en banc*). Plaintiff has satisfied that burden here, as the record in this case – as set forth above and viewed in a light most favorable to Plaintiff – demonstrates that any ostensible "legitimate" explanations for Defendant's actions are pretextual.

Even if the Court were to find that the existing record did not support a finding of pretext (it does), Plaintiff would be entitled to the "benefit of the doubt" on this issue as Defendant has failed to produce *any* evidence bearing on the issue of pretext in this case. As noted in Plaintiff's two pending motions to compel, *see* Docket Nos. 38, 39, 40, 41 and 43, Defendant has failed to produce *any* information regarding other complaints of disability and/or FMLA discrimination/retaliation made against Defendant. As also noted in the motions to compel, this

Court has recognized that claims of disparate treatment, including failure to accommodate, of necessity require discovery of how others have been treated. *See*, *e.g.*, *Finch v. Hercules Inc.*, 149 F.R.D. 60 (D. Del. 1993) (citations omitted). This information is relevant to the issue of whether Defendant intentionally discriminated against Plaintiff, as well as to whether any reasons offered by Defendant for its actions vis-à-vis Plaintiff are pretextual. Defendant has continued to refuse to provide *any* responsive documentation or information – even though it has admitted that the evidence is within its possession, custody or control.

Plaintiff also requested in discovery the personnel and/or employment files of four individuals – each of whom directly supervised and worked with Plaintiff and/or took part in the decision to deny Plaintiff reasonable accommodations in the workplace (Ana Klancic, Tara Kessler, Kristin Bosley, and Elise Zapp). Plaintiff has also asserted that three of these individuals made disparaging comments about her disability status (Ms. Klancic, Ms. Bosley and Ms. Zapp). It very well may be that other employees or applicants for employment complained about discriminatory or harassing treatment on the part of these individuals. In fact, there can be no doubt that others have complained*, as at least two witnesses in this case have testified that Ms. Klancic, Plaintiff's former supervisor, was terminated from the employ of Defendant for "discrimination." See* Ex. 6, Klancic Dep. at 15, Ex. 12, Rock Dep. at 53-54. This information is relevant to the issue of whether Defendant intentionally discriminated against Plaintiff, whether Defendant properly trained its employees to deal with the issues presented in the Complaint, and whether any reasons offered by Defendant for its actions vis-à-vis Plaintiff are pretextual. Courts routinely have found such information to be discoverable. *See*, *e.g.*, *Fox Martin v. H.J. Heinze Operations*, 2003 U.S. Dist. LEXIS 23571 (D. Kan. Dec. 19, 2003) (overruling defendant's objections and granting plaintiff's motion to compel fifteen personnel

files) (citing cases); *Coughlin v. Lee*, 946 F.2d 1152 (5th Cir. 1991) (noting that in employment discrimination litigation, in which plaintiffs are required to prove pretext, courts have customarily allowed wide discovery of personnel files) (citing cases); *Gaul v. ZEP Manufacturing Company, et al.*, Civ. No. 03-2439, 2004 U.S. Dist. LEXIS 1990 (E.D. Pa. Feb. 5, 2004) (ordering defendant to produce entire personnel files to plaintiff in Title VII case); *Marcarelli v. Delaware County Memorial Hospital, Inc.*, Civ. No. 86-1630, 1987 U.S. Dist. LEXIS 10320 (June 4, 1987) (finding personnel files of other employees in Title VII action were relevant and ordering defendant to turn over such files).

Defendant's refusal to provide this information – *as well as Defendant's assertion in this litigation that Plaintiff was not entitled to reasonable accommodations because Defendant "lost" Plaintiff's personnel file* – gives rise to a reasonable inference that Defendant is withholding this information out of the fear that the information is harmful to its position. Courts within the Third Circuit will instruct a jury that it may draw an adverse inference from a party's failure to produce evidence when (as here):  (1) the evidence is within the party's possession or control; and (2) it appears there has been "an actual suppression or withholding of the evidence[.]"  *Muzzleman v. National Rail Passenger Corp.*, 839 F. Supp. 1094 (D. Del. 1993).  Indeed, "[w]hen the contents of a document are relevant to an issue in a case, the trier of fact generally may receive the fact of the document's nonproduction or destruction as evidence that the party that has prevented production did so out of the well-founded fear that the contents would harm him."  *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 334 (3d Cir. 1995), citing *Gumbs v. International Harvester, Inc.*, 718 F.2d 88, 96 (3d Cir. 1983); *United Sates v. Cherkasky Meat Co.*, 259 F.2d 89 (3d Cir. 1958).

In light of the above, "[i]t is a proper question for the jury whether [D]efendant's proffered justifications are worthy of credence or whether the true reason for [Defendant's] act was discrimination," and Defendant's Motion should be denied.  *Tribuani v. MBNA America Bank, N.A.*, Civ. No. 03-351-SLR, 2005 U.S. Dist. LEXIS 6546 (D. Del. Mar. 31, 2005) (denying defendant's motion for summary judgment).

**V.    Conclusion**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion for Partial Summary Judgment.

Dated:   May 23, 2007                          Respectfully submitted,

//s//  *Gary W. Aber*
_____
Gary W. Aber
Aber, Golust, Baker & Over
702 King Street
P.O. Box1675
Wilmington, DE 19899
Tel:  (866) 826-4950
Fax:  (302) 472-4920
gaber@gablawde.com

and

James B. Bailey*
Jason H. Ehrenberg*
BAILEY & EHRENBERG PLLC
1155 Connecticut Avenue NW
Suite 1100
Washington, D.C. 20036
Tel:  (202) 465-4729
Fax:  (202) 318-7071
jhe@becounsel.com

* Admitted *pro hac vice*

**CERTIFICATE OF SERV ICE**

The undersigned certifies that on this 23rd day of May 2007, copies of the foregoing were

served via the District Court's ECF electronic filing system upon the following:


Francis G.X. Pileggi
Sheldon K. Rennie
Fox Rothchild LLP
Citizens Bank Center, Suite 1300
919 North Market Street
P.O. Box 2323
Wilmington Delaware  19899-2323


David Campbell
Lori L. Fauvie
Vorys, Sater, Seymour and Pease LLP
1375 East Ninth Street
2100 One Cleveland Center
Cleveland, Ohio 44114-1724


//s// *Gary W. Aber*
_____

Gary W. Aber