# EXHIBIT 2

# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PAULA PAGONAKIS, <br><br> Plaintiff, <br><br> v. <br><br> EXPRESS, LLC, a/k/a/ <br> LIMITED BRANDS, INC. <br><br> Defendant. | Case No. 06-027 (SLR) <br><br> **JURY TRIAL DEMANDED** |

## DECLARATION OF PAULA PAGONAKIS

I, Paula Pagonakis, the Plaintiff in the captioned-matter, do hereby affirm and solemnly declare pursuant to 28 U.S.C. § 1746:

1. I am over 18 years of age and if called to testify at trial would be competent to testify as to the matters set forth below.

2. As a result of a traumatic brain injury suffered in a car accident on April 12, 1995, I have been diagnosed as having Closed Head Injury, Adjustment Disorder with Depressed Mood, Cognitive Disorder, and Fibromyalgia.

3. I have persistent visual dysfunction related to my closed head injury. This at time causes me difficulty with reading and causes me to become disoriented, or lose my equilibrium, when exposed to bright or moving lights or other visual stimuli (such as multiple objects moving simultaneously). I also have persistent vertigo related to my closed head injury with a tendency toward backward imbalance. As a result of these physical and mental impairments, I experience difficulty processing auditory and written

information, am easily distracted, and have trouble organizing my thoughts. I also have multiple areas of pain in my neck, back and limbs due to the fibromyalgia.

4. My physical and mental impairments – namely my trouble processing auditory and visual information – severely restrict my ability to perform several major life activities. I am substantially limited in my ability to see, hear, read, think, work and drive as a result of my physical and mental impairments.

5. In November 1997, I began working for Express as a part-time salesperson in Ohio. At the time of my interview for the part-time salesperson position, I informed representatives of Express that I had the physical and mental impairments noted above. I provided representatives of Defendant with relevant medical information at the time and requested that Defendant accommodate these physical and mental impairments, by among other things, allowing me to work during daylight hours only and working a fairly flexible schedule. Defendant accommodated these disabilities at the time.

6. In June 2000, I transferred from Ohio to Newark, Delaware as a part-time salesperson. My personnel file, including the information regarding my disabilities and necessary accommodations, was transferred to the Newark Delaware place of business.

7. Ana Klancic was the District Manager in charge of the Christiana Mall store from the time I transferred to the Christiana Mall store in June 2000 through the termination of my employment in March 2004. In her capacity as District Manager, Ms. Klancic had frequent contact with, and supervision over, me.

8. Kristin Bosley was the Store Manager of the Christiana Mall store during my tenure at that store, and had supervisory authority over me.

9. Elise Zapp (formerly O'Neill) was a Co-Manager of the Christiana Mall store during my tenure at that store, and also had supervisor authority over me.

10. My supervisors and co-workers at the Christiana Mall store were aware that I suffered from medical conditions/disabilities that necessitated certain workplace accommodations.

11. When I began working at the Christiana Mall store in June 2000, I discussed my medical conditions/disabilities and need for certain accommodations in the workplace with my supervisors, Ms. Bosley and Ms. Klancic. My supervisors subsequently authorized certain workplace accommodations for me. These accommodations included: (a) allowing me to take periodic breaks; (b) scheduling me only for daylight hours; (c) not assigning me tasks that called for climbing; (d) scheduling me for a day off every three to four days; and (e) periodically allowing me to work from home.

12. In March 2002, I was promoted by Ms. Klancic into the position of Brand Sales Leader. This position was a full-time, quasi-managerial position. Defendant continued to provide me the previously authorized workplace accommodations subsequent to this promotion.

13. After I was promoted into the position of Brand Sales Leader in March 2002, Ms. Klancic and Ms. Zapp began to make offhanded comments to other store personnel about my disabilities and about their view that I was not "management material" because of my disabilities. Other store personnel also made such comments.

14. I complained about this unwelcome treatment to my District Manager, Ana Klancic, on many occasions. In response, Ms. Klancic instructed me to "just go

along with it," "not ruffle features," and "try to find a way to avoid [the other managerial employees] making the comments."

15.  In June 2003, Ms. Klancic promoted me into the position of Co-Manager at the Christiana Mall store. At the time of my promotion, I provided additional information to Ms. Klancic about my physical and mental impairments so that Ms. Klancic would fully understand my physical and mental limitations and so that Ms. Klancic could make sure that I could effectively perform the essential functions of this new position. Because Ms. Klancic felt that I was an asset to my team and could perform the essential functions of the position of Co-Manager with my prior workplace accommodations in place, Ms. Klancic agreed to keep my workplace accommodations in place.

16.  As had been the case in my position of Brand Sales Lead, I was required as a Co-Manager, to work a forty-hour work week. I satisfied this requirement.

17.  Although Defendant promoted me into the position of Co-Manager, and although I was supposed to receive extensive training to prepare me for the position of Co-Manager, I never received the appropriate training for the Co-Manager position.

18.  In addition, I was not afforded the same level of responsibility as other Co-Managers. For example, unlike other Co-Mangers, I was never trained on the cash registers or provided with keys to cash registers. Similarly, my supervisors did not provide me with keys to unlock the Christiana Mall store.

19.  From the time of my promotion to Co-Manager in June 2003 through late October/early November 2003, I was afforded the same workplace accommodations that previously had been in place.

20.　　Defendant withdrew my workplace accommodations in early November 2003. For example, as of November 2003, I was required, among other things, to change my schedule and work several evening shifts. Defendant also changed its managerial meetings from mornings to evenings, in an effort to prevent me from being able to participate in the meetings (due to my inability to drive at night). Defendant also began to assign me tasks that involved climbing. Defendant also frequently required me to work from 8:00 a.m. until 4:00 p.m. with no breaks and assigned me to work five to six days in a row.

21.　　On November 25, 2003, I was informed by Tara Kessler, a Regional Human Resources Generalist for Defendant, that Defendant no longer would provide me with reasonable accommodations for my disabilities because: (a) Defendant had lost my personnel file, so there was no longer any validation of my disabilities or need for accommodations on file with Defendant; and (b) the individual that had previously authorized the accommodations allegedly did not have authority to do so.

22.　　During our November 25, 2003 meeting, Ms. Kessler asked me if I had ever presented doctor's reports to verify my disabilities. I answered in the affirmative and promptly attempted to submit medical records to Ms. Kessler, who refused to accept them. Ms. Kessler then directed me to contact Defendant's Human Resources Department within twenty-four hours to let them know of my need for accommodations, and to submit the necessary documentation to this Department.

23.　　I immediately contacted Defendant's Human Resources Department and Defendant's Corporate Department, as directed by Ms. Kessler, to determine to whom I needed to provide the relevant medical documentation. Despite my best efforts,

Defendant did not accept the information I sought to submit, and continued to fail to reasonable accommodate my impairments well into December 2003.

24.  Due to Defendant's failure to reasonably accommodate my impairments, I suffered from extreme fatigue, exhaustion and stress and was forced to take Family Medical Leave on December 9, 2003. Shortly thereafter, I and my physician submitted medical documentation of my need for workplace accommodations.

25.  My physician cleared me to return to work approximately two weeks later. Upon returning to work on December 23, 2003, I provided Defendant with yet another letter from my physician that indicated that I needed the following accommodations with my job: (a) daylight work hours; (b) well lit work area; (c) no climbing; (d) no wet work place; (e) periodic breaks as provided by law; and (f) intermittent days off every three to four days. The letter also stated that representatives of Defendant should feel free to contact my physician should Defendant have any additional questions. Defendant accepted this information and informed me that I had provided all necessary information.

26.  Upon my return to work on December 23, 2003, and continuing through January of 2004, my supervisors and co-workers treated me in a disparaging manner, including by making rude comments to me in front of other employees. Ms. Bosley and Ms. O'Neil also frequently criticizing me for taking FMLA leave and humiliated me by overriding my directions to subordinate employees.

27.  As a result of the disparate treatment I faced at work – including the harassing comments of my supervisors – and Defendant's continuing refusal to provide reasonable workplace accommodations, I was forced to take additional Family and Medical Leave on February 3, 2004.

28.     Although I made several efforts to discuss the accommodation issue with my supervisors during my second medical leave, my supervisors refused to communicate with me.

29.     Due to my extreme physical and mental fatigue and distress – resulting from Defendant's disparate treatment, failure to accommodate my known disabilities, and failure to communicate with me from February 3, 2004 forward – my physician extended my leave of absence on February 17, 2004.

30.     As of March 18, 2004, Defendant still had not located my personnel file, still had not contacted my physician to discuss my medical conditions and potential accommodations, still had not communicated with me about my request for workplace accommodations, and still had not made efforts to reasonably accommodate my disabilities.

31.     Because I no longer could tolerate the hostile treatment I faced on account of my disability and because I no longer could mentally or physically tolerate working for Defendant without necessary accommodations, I was forced to resign from my position with Defendant on March 18, 2004.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 23rd day of May 2007 at Charlottesville, Virginia

*Paula Pagonakis*
Paula Pagonakis