# EXHIBIT 7

05/23/2007 18:32 FAX 202 659 1027    BIRCH HORTON BITTNER    ☐002/004
Apr 04 07 05:18p    adrian .oeb    13027310727    p.1
Case 1:06-cv-00027-SLR    Document 56-8    Filed 05/23/2007    Page 2 of 4

# IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF DELAWARE

| | |
|---|---|
| PAULA PAGONAKIS ) | |
| ) | |
| Plaintiff, ) | Case No. 06-027 |
| ) | |
| v. ) | **JURY TRIAL DEMANDED** |
| ) | |
| EXPRESS, LLC, a/k/a/ ) | |
| LIMITED BRANDS, INC. ) | |
| ) | |
| Defendant. ) | |

## DECLARATION OF DARIA CARPENTER

I, Daria Carpenter, do hereby affirm and solemnly declare pursuant to 28 U.S.C. § 1746:

1. I am over 18 years of age and if called to testify at trial would be competent to testify as to the matters set forth below.

2. I began working for Express in the early summer of 2003 as a sales associate at the Christiana Mall in Newark, Delaware. Paula Pagonakis, the Plaintiff in the captioned matter, interviewed for, and hired me into, my position as a sales associate with Express. Paula and I worked together for Express at the Christiana Mall from the time I started working for Express until Paula's employment was terminated in March 2004.

3. Although Express purported to promote Paula into the position of Assistant Manager around the time I started working at the Christiana Mall store in the summer of 2003, nobody trained Paula for the position of Assistant Manager and Paula's supervisors did not provide her with the tools and training necessary to perform the functions of an Assistant Manager. Nor was Paula treated the same as other Assistant

Managers or given the same responsibility as other Assistant Managers. For example, Paula's supervisors did not provide Paula with a key to the cash registers at, or to the door of, the Christiana Mall store. Accordingly, Paula was unable to "open" the store in the mornings – unlike the other Assistant Managers. Similarly, Paula was never trained on the cash registers, unlike other Assistant Managers.

4. When I started working at the Christiana Mall store in the summer of 2003, Paula's supervisors allowed her to take periodic breaks, including lunch breaks, as an accommodation for her known disabilities and medical conditions. Additionally, Paula's supervisors only scheduled her for daylight hours and did not assign her tasks that called for climbing (such as having to clime to place or fold jeans on high shelves at the store), as an accommodation for Paula's known disabilities and medical conditions. Paula was also scheduled for a day off every three to four days.

5. Starting in fall of 2003 and continuing through the winter of 2003 into early 2004, Paula's supervisors stopped accommodating her known disabilities and medical conditions. For example, as time went on, Paula's supervisors, among other things: (a) scheduled Paula to work afternoon/evening shifts; (b) stopped holding managers meetings in the mornings and moved those meetings to evening hours; (c) started to assign Paula tasks that involved climbing; and (d) did not allow Paula to take breaks that she had previously been allowed to take when she was at work. Some days, Paula's supervisors did not even allow her to take a lunch break. Paula's supervisors also began to assign her to work five to six days in a row, even though they had previously accommodated her by allowing her to take a day off from work ever three to four days.

05/23/2007 18:33 FAX 202 659 1027     BIRCH HORTON BITTNER              ☑004/004
Apr 04 07 05:18p     adrian loeb              13027910727       p.3
Case 1:06-cv-00027-SLR    Document 56-8    Filed 05/23/2007    Page 4 of 4

6. Paula's supervsors also started to treat Paula in a disparaging and hostile manner in the fall and winter of 2003, including making rude comments to her in front of myself and other employees. During this time period, one of the Christiana Store's Co-Managers, Elise O'Neill, would yell at me and chastise me whenever she saw me speaking with Paula. Ms. O'Neill made it very clear to me from her words and actions that she did not want me speaking with Paula. Ms. O'Neill also made disparaging comments to Paula during this time period. It is my firm belief that Paula's supervisors treated her unfairly. I don't understand why this is, because Paula was an excellent employee whom I respected and enjoyed working with and for.

Executed this 20 day of February 2007 at Washington, D.C.

Daria Carpenter