# EXHIBIT 8

```
 1            IN THE UNITED STATES DISTRICT COURT
                      DISTRICT OF DELAWARE
 2

 3
      PAULA PAGONAKIS,            )
 4                                )
            Plaintiff,            )
 5                                )
         vs.                      )   Civil Action No.
 6                                )   1:06-CV-00027 GMS
      EXPRESS, LLC, A/K/A         )
 7    LIMITED BRANDS, INC.        )
                                  )
 8          Defendants.           )

 9

10

11              VIDEOTAPED DEPOSITION

12              of JENNIFER HINKLE

13

14           Taken at the offices of
         VORYS, SATER, SEYMOUR & PEASE, LLP
15              52 East Gay Street
            Columbus, Ohio  43216-1008
16
      on November 20, 2006, at 10:02 a.m.
17

18    Reported by: Angela R. Starbuck, RPR

19

20

21              -=0=-

22

23

24
```

Professional Reporters, Inc.
(614) 460-5000 or (800) 229-0675

JENNIFER HINKLE
NOVEMBER 20, 2006

1    Q. Okay. And do you know whether Paula
2  was ever trained for the duties of a
3  co-manager?
4    A. I would believe that she was. I
5  mean, we certainly have on-boarding in
6  place.
7    Q. Okay. Well --
8    A. That would have been something her
9  store manager was responsible for executing.
10   Q. And is that documented anywhere,
11 whether or not somebody gets training?
12   A. I don't know.
13   Q. Okay. So the store manager, that
14 would have been Kristyn Bosley --
15   A. That's correct.
16   Q. -- that would have been responsible
17 for training Paula?
18       And the reason I ask is because one
19 of Paula's allegations is that she was not
20 trained for the duties of a co-manager, but
21 I guess you're saying you don't have any
22 information on whether or not she got that
23 training?
24   A. I believe that she was. I have

JENNIFER HINKLE
NOVEMBER 20, 2006

```
 1    nothing that I can produce that would prove
 2    that.
 3        Q.  Okay.
 4        A.  But our -- our process would
 5    certainly dictate that she was trained.
 6        Q.  Okay.  And then other than the --
 7    the additional monies that were paid to the
 8    Christiana store to cover the folks that
 9    would need to cover for Paula, do you have
10    any evidence that -- or do you know of any
11    evidence that she -- that Paula's
12    accommodations were continued through --
13    past December of 2003?
14        A.  You know, in -- in conversation that
15    I had with both Tara and Ana ongoing after
16    that time, both of them would -- you know,
17    because I continued to follow up on this --
18    confirm to me in every conversation that
19    they were continuing to accommodate her
20    restrictions.
21        Q.  Okay.  But there's nothing in
22    writing that you know of?
23        A.  No.
24        Q.  Okay.
```

Professional Reporters, Inc.
(614) 460-5000 or (800) 229-0675

JENNIFER HINKLE
NOVEMBER 20, 2006

```
 1              MR. CAMPBELL:  Can we put that on
 2   mute --
 3              MR. EHRENBERG:  We're going to put
 4   you on mute real quick.
 5              THE WITNESS:  Okay.
 6              (Pause in proceedings.)
 7              MR. EHRENBERG:  And then when we're
 8   back on, if you could just read the last
 9   question and answer for me.
10              COURT REPORTER:  Sure.
11              MR. EHRENBERG:  Thank you.
12              (Record read as requested.)
13              MR. EHRENBERG:  Okay.  Thank you.
14              Okay.  If you could hand the
15   reporter Express PAG40.
16                      -=0=-
17              (Exhibit 4 marked.)
18                      -=0=-
19              COURT REPORTER:  That's marked
20   Exhibit 4 and I've given it to the witness.
21   BY MR. EHRENBERG:
22       Q.  Miss Hinkle, have you seen Exhibit 4
23   previously?
24       A.  Yes.
```