## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

PAULA PAGONAKIS,      )     CASE NO. 06-027 SLR
                   )
        Plaintiff,   )
v.               )
                   )
EXPRESS, LLC, a/k/a    )
LIMITED BRANDS, INC.,  )
                   )
       Defendant.  )

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT EXPRESS, LLC'S MOTION FOR SUMMARY JUDGMENT

**I.  INTRODUCTION**

Plaintiff's Opposition to Defendant's Motion for Summary Judgment (hereinafter the "Opposition") fails to set forth any genuine issues of material fact for trial. In fact, it highlights the material deficiencies in two of Plaintiff's claims.

As to FMLA retaliation, the Opposition highlights the frivolous nature of this claim. Although Plaintiff has submitted a thirty-eight page opposition, only two pages address her FMLA claim. Moreover, in these two pages, Plaintiff mis-cites the legal standard and confirms that the FMLA claim is simply a repackaging of her ADA claim. The obvious reason for this repackaging is that Plaintiff realizes the procedural weaknesses of her ADA claim that are addressed in Defendant's second motion for summary judgment.

Similarly, Plaintiff spends little time on her ADA constructive discharge claim. Although Plaintiff does cite the correct legal standard for such a claim, she misapplies this standard, citing evidence of Plaintiff's subjective beliefs. The objective and undisputed evidence clearly demonstrates that no reasonable person would have resigned under the circumstances at issue. Accordingly, summary judgment should be granted in favor of Defendant on this claim as well.

Finally, the heart of this matter is Plaintiff's claim that Defendant failed to accommodate her medical restrictions. As set forth in Defendant's motion, there is an abundance of evidence that Plaintiff was accommodated at all times. However, Plaintiff's after-the-fact claim to the contrary (she never complained during her employment), also fails as a matter of law. The undisputed evidence confirms that Plaintiff could not perform the essential functions of her position and that the requested accommodations were unreasonable.

In sum, because no genuine issues of material fact exist for trial, Defendant's motion for summary judgment should be granted in its entirety and this matter terminated.

## II.    PLAINTIFF'S FMLA CLAIM (COUNT III) FAILS AS A MATTER OF LAW

Although the Opposition submitted by Plaintiff is thirty-eight pages, only two and one half pages address Plaintiff's FMLA claim (Count III). The reason for this is simple and obvious – Plaintiff's FMLA claim is legally and factually flawed.

### A.    Plaintiff Is Applying The Wrong Legal Standard.

On page 33 of the Opposition, Plaintiff purports to set forth the prima facia case for FMLA retaliation. Plaintiff sets forth five purported factors, including a claimed factor of, "Plaintiff gave appropriate notice of her need to be absent from work." Opposition at 33. Incredibly, Plaintiff cites two federal court decisions that purportedly support her legal position: Bearley v. Friendly Ice Cream Corp., 322 F.Supp.2d 563, 571 (M.D. Pa. 2004) and Callison v. City of Philadelphia, 430 F.3d 117, 119 (3rd Cir. 2005).

A quick review of the two decisions cited by Plaintiff demonstrate the legal flaws in her argument. In Bearley, the court sets forth a three factor FMLA retaliation test, none of which match the factors set forth by Plaintiff in her Opposition. Bearley, 322 F.Supp.2d at 571. In Callison, the Third Circuit was not even addressing a retaliation claim and did not set forth any

2

retaliation factor test. <u>Callison</u>, 430 F.3d at 119 ("This appeal only involves the interference provision of the FMLA").

To establish an FMLA retaliation claim Plaintiff "must show that (1) [s]he took an FMLA leave, (2) [s]he suffered an adverse employment decision, and (3) the adverse decision was causally related to [her] leave. <u>Conoshenti v. Public Service Elec. & Gas Co.</u>, 364 F.3d 135, 146-47 (3d Cir. 2004). Plaintiff has failed to meet this burden.

**B.    <u>Plaintiff Cannot Establish A Prima Facie Case Of Retaliation.</u>**

Plaintiff's Opposition makes clear that her FMLA retaliation claim is simply a repackaging of her ADA claim. Opposition at 33. Specifically, the alleged adverse action at issue is Plaintiff's allegation that Defendant failed to accommodate her restrictions. Opposition at 33-34 (""Defendant disputes that it ceased providing Plaintiff with workplace accommodations").

Plaintiff requested two FMLA leaves during her employment – both of which were granted. Plaintiff's Dep. at 78-79; 81-82. The first leave, as set forth in Plaintiff's Opposition, was requested and approved in December, 2003. Opposition at 10. This leave took place *after* Plaintiff's accommodations became an issue. Opposition at 9. The second leave took place on February 3, 2004. Opposition at 12. Plaintiff never returned to work following this leave. Opposition at 12.

Based on these facts, a causal connection simply does not exist between Plaintiff's requested accommodations and her FMLA leaves. The leaves took place after the accommodation issue first arose. Both leaves requested were approved. Finally, at her deposition, Plaintiff admitted that she cannot articulate any factual basis to support her FMLA

claim. Plaintiff's Dep. at 78. Accordingly, summary judgment should be entered in favor of Defendant on Count III of Plaintiff's Complaint.

## III.    PLAINTIFF WAS NOT CONSRUCTIVELY DISCHARGED

As with her FMLA claim, Plaintiff spends little time (two pages) addressing constructive discharge – an issue critical to her ADA claim. Opposition at 30-32.[1]

Unlike her FMLA claim, Plaintiff does correctly cite Third Circuit law applicable to constructive discharge claims. Opposition at 30. Specifically, to establish constructive discharge, Plaintiff "was required to show that [Defendant] knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign. *See* Goss v. Exxon Office Sys. Co., 747 F. 2d 885, 888 (3d Cir. 1984). "Intolerability ... is assessed by the *objective standard* of whether a reasonable person in the employee's position would have felt compelled to resign." Connors v. Chrysler Financial Corp., 160 F. 3d 971, 976 (3d Cir. 1998) (emphasis added). The Third Circuit has found that minor annoyances and isolated comments would not compel a reasonable person to resign. *Tanganelli v. Talbots, Inc.*, 2006 WL 463911, at **3 (3d Cir. Feb 28, 2006).

The Opposition, however, focuses on a subjective standard – citing Plaintiff's deposition testimony that she felt compelled to resign. Opposition at 31. The objective facts demonstrate that a reasonable person in Plaintiff's position would not have felt compelled to resign:

- Prior to resigning, Plaintiff requested an extension of her leave for non-medical reasons. Plaintiff's Cont. Dep. at 52.

- On March 18, 2004, Plaintiff was released to return to work by her physician. Plaintiff's Dep. at 181, Ex. 12. Plaintiff tried, unsuccessfully, to extend the medical leave through discussions with her physician. Plaintiff's Cont. Dep. at 55.

---

[1] Based on Plaintiff's Opposition, it is clear that the constructive discharge claim is only relevant to Plaintiff's ADA claim.

- At the time of her resignation, Plaintiff was house hunting in Virginia, as her husband had been transferred to that state. Plaintiff's Cont. Dep. at 54.

- Plaintiff provided no reason or explanation for her resignation. Plaintiff Dep. 164, Ex. 4; Decl. Hinkle at ¶ 16.

- Plaintiff visited the store after her resignation, upon receiving no response to her resignation letter. Plaintiff Cont. Dep. 43, Ex. 8.

- Plaintiff *never* complained of any harassment, discrimination, or retaliation. Plaintiff Cont. Dep. at 47-50.

- During her FMLA leave of absence of February 3, 2004 through March 18, 2004, Plaintiff *never* discussed her need for accommodation with her Store Manager or District Manager. Plaintiff's Dep. at Ex. 8; Klanic Dep. at 54.

Even more telling, Ms. Klancic – who Plaintiff asserts was in the best position to opine as to her employment – admits that Plaintiff resigned, and was not constructively discharged. Klanic Dep. at 103 (Q. . . you agree that [Plaintiff] voluntarily resigned . . .? A. Yes.). In light of these undisputed facts, Plaintiff cannot contend that Defendant *knowingly* permitted any discrimination so as to compel Plaintiff's resignation. The facts as alleged simply fail to meet the objective "reasonable person" standard. Accordingly, summary judgment should be granted in favor of Defendant on Plaintiff's ADA, constructive discharge claim.

## IV.    PLAINTIFF'S FAILURE TO ACCOMMODATE CLAIM IS MERTLESS[2]

The vast majority of Plaintiff's Opposition addresses her allegation that Defendant failed to accommodate her restrictions in violation of the ADA. This claim is meritless for several reasons.

---

[2] Contrary to Plaintiff's assertions, Defendant's Motion for Summary Judgment encompasses both of Plaintiff's ADA claims – Count II and Count III of the Complaint. Both claims involve an alleged failure to accommodate. The allegations in Count II of the Complaint – Plaintiff's ADA discrimination claim – mirror the allegations in Count III of the Complaint. Compare Complaint ¶ 39 and ¶ 44. Plaintiff's inability to prove that she is a "qualified" individual under the ADA is fatal to these claims.

**A.**     <u>The Unconverted Evidence Confirm That Plaintiff Could Not Perform The Essential Functions Of Her Position.</u>

Even if the Court were to find that there is an issue of fact as to whether Defendant accommodated Plaintiff throughout employment (which it did), the dispositive fact is undisputed – Plaintiff could not perform the essential functions of the Co-Manager position, which rendered her not a "qualified" individual under the ADA thereby obviating Defendant's legal obligation to provide any accommodation to her. Plaintiff claims that "Defendant's only 'evidence'" in support of its 'essential functions' argument is a bare assertion made by one of Defendant's current employee, Jennifer Hinkle." Opposition at 17.

While Plaintiff asserts Ms. Hinkle's affidavit is insufficient evidence of the essential functions of the Co-Manager position, the law demonstrates to the contrary. It is well established that Defendant – not the Plaintiff – has the right to determine the essential functions of the job. 42 U.S.C. § 12111(8); 29 C.F.R. § 1630(2)(n)(3). "[E]vidence of whether a particular function is essential includes . . . the employer's judgment as to which functions are essential." <u>See</u> 29 C.F.R. § 1630.2; <u>see also</u> <u>Simmerman v. Hardee's Food Sys. Inc.</u>, No. CIV. A. 94-6906, 1996 WL 131948, <u>aff'd</u> 118 F.3d 1578 (3d Cir. 1997) (relying, in part, on affidavit of General Manager to determine the essential functions of the position at issue). Ms. Hinkle's affidavit is just that – Defendant's judgment as to the essential functions of the Co-Manager position.

Moreover, Defendant does not merely rely upon Ms. Hinkle's affidavit. To the contrary, Defendant cites to, and relies upon the deposition testimony of Plaintiff, as well as Plaintiff's District Manager, Ana Klancic. As Plaintiff states in her Opposition, "who would be in a better position to opine as to whether Plaintiff could perform the essential functions of a Co-Manager position than the individual who promoted Plaintiff into the position and who regularly

supervised Plaintiff and assigned her tasks". Opposition at 19.   That individual Plaintiff asserts is Ms. Klancic.

Ms. Klancic's deposition testimony is consistent with Ms. Hinkle's affidavit and confirms that the essential functions of the Co-Manager position include the following:

- The ability to work a minimum schedule of 40 hours a week (Decl. Hinkle ¶ 4,5; Klancic Dep. at 25-30; 103);

- The ability to open and close the store on a regular basis (Decl. Hinkle ¶ 4,5; Klancic Dep. at 25-30; 102); and

- Regular attendance, which necessarily means the ability to be present in the store as scheduled (Decl. Hinkle ¶ 4,5; Klancic Dep. at 24-30).

The fallacy in Plaintiff's argument is belied by her own Opposition in which  Plaintiff concedes that working a minimum of 40 hours a week is not a disputed fact.  Opposition at 2 (as an undisputed fact Plaintiff states: "As had been the case in her position of Brand Sales Lead, Plaintiff was required as a Co-Manager, to work forty hour work week.").

Ms. Klancic's testimony – which Plaintiff claims is dispositive –confirms that Plaintiff was unable to perform the essential functions of the Co-Manager position.  Ms. Klancic testified:

- Plaintiff was unable to open or close the store on a regular basis (Klancic Dep. at 95) (Q. But she did not [close the store on a regular basis]? A. No.);

- Plaintiff did not work 40 hours a week, although she was paid for 40 hours of work (Klancic Dep. at 101, 102) (Q. Isn't it true that after Ms. Pagonakis was promoted to co-manager in June 2003 that she was permitted to work less than a 40-hour work week as a co-manager? A. Yes.  *** Q. And when you let Ms. Pagonakis work less than a 40-hour work week she was nevertheless paid a salary of 40 hours a week . . .? A. Correct); and

- Plaintiff was unable to work as scheduled; she worked an unpredictable schedule that allowed her to work whatever schedule she chose. (Klancic Dep. at 63, 94-95, 99-100 (Q.  And it wasn't only scheduling for daylight hours, she also had a flexible schedule in that some mornings she may not be able to come in at all? A. Correct. Q. And it was unexpected, unless she could predict the weather, if it was foggy on Tuesday she couldn't come in until the fog was lifted? A. Correct).

Plaintiff asks this Court to ignore this overwhelming testimony and to focus on one narrow portion of her deposition in which Ms. Klancic was not testifying about whether Plaintiff was able to perform the essential functions of her position, but rather if she was a good employee. Being a good employee and being able to perform the essential functions of the Co-Manager position are not the same thing. As Ms. Klancic's testimony shows, regardless of whether she was a good employee, it is evident that she could not regularly open and close the store; she could not work 40 hours a week in the store; and she could not work as scheduled. Simply put, it is undisputed that Plaintiff could not perform the essential functions of her position.

This conclusion, in fact, is substantiated by Plaintiff's own deposition testimony:

- Plaintiff concedes that she could not work her scheduled shifts as she admits there were days that she reported to work late and left early when she believed she was unable to commute to work due to the weather (Plaintiff's Dep. at 104-7; Plaintiff's Cont. Dep. at 36, 38 39) (Q. When you started your shift had to be flexible for you just in case something came up; is that right? A. Yes.)

- Plaintiff acknowledges that she did not have regular attendance as her schedule changed daily; regardless of what hours she was scheduled to work, she "c[a]me in when she could get in." (Plaintiff's Cont. Dep. at 38-9; Plaintiff's Dep. at 104-7) (Q. Your work hours would change on a daily or weekly basis? A. Pretty much daily . . . .").

Plaintiff somehow argues that Defendant's alleged failure to train her on opening and closing the store has some bearing on whether she could perform the essential functions of her job. Opposition at 18. It does not. Regardless of whether Plaintiff was trained to open or close the store, it is undisputed that Plaintiff could not perform these duties – her deposition testimony, as well as the deposition testimony of Ms. Klancic, substantiates that Plaintiff could not—and did not – regularly open or close the store (Plaintiff's Dep. at 104-7; Klancic Dep. at 95).

Accordingly, Plaintiff's Opposition fails to defeat the undisputed evidence that Plaintiff could not perform the essential functions of the Co-Manager position. This fact is fatal to Plaintiff's ADA claims and compels summary judgment in Defendant's favor.

### B.   The Well-Settled Law Confirms That Plaintiff's Requested Accommodations Were Unreasonable.

Plaintiff claims that there is "significant case law that holds that providing a flexible work schedule is not, as a matter of law an unreasonable accommodation." Opposition at 21. Plaintiff's Opposition, however, is devoid of any such case law. While a "modified work schedule" or a "flexible schedule" may be reasonable under the ADA, that is not what Plaintiff is requesting. Plaintiff is asking Express to change an essential function of the Co-Manager position. She is asking Express to allow her to work less than 40 hours in the store, to only work daylight hours, which would prevent her from being able to open or close the store on a regular basis, and to work whatever hours she wanted, regardless of her scheduled shift. Plaintiff's Dep. at Ex. 3.

The law is clear: "The ADA does not require an employer to modify the actual duties of job to make an accommodation for individuals who are not physically capable of performing them." 42 U.S.C. § 12111(8); see also Donahue v. CONRAIL, 224 F.3d 226, 232 (3d Cir. 2000) ("employers are not required to modify the essential functions of a job in order to accommodate an employee."). The case law relied upon by Plaintiff is inapposite as Plaintiff's requested accommodations would not merely be an "inconvenience" to Defendant or result in "preferential treatment", rather, they would require Defendant to delete essential elements of the Co-Manager position and essentially create a new position for Plaintiff. See, e.g., Simmerman, No. CIV. A. 94-6906, 1996 WL 131948, at *8 ("'Reasonable accommodations' does not mean eliminating an

essential function of the job, or requiring an employer to restrict a person's job duties to those which the individual can perform.") (internal citations committed).

Indeed, Emory v. Astrazenca Pharmaceuticals, No. Civ. 02-1466, 2006 WL 197456 (D. Del. Jan. 25, 2006) – the case Plaintiff claims is "on all fours with the present case" – actually demonstrates the error in Plaintiff's argument.    In Emory, the plaintiff was asking for accommodations that would allow him to perform the essential functions of his job.   In contrast, Plaintiff is requesting that Defendant eliminate the essential functions of her job – which is not a reasonable accommodation as a matter of law.   See Donahue, 224 F.3d 226 at 232.

Finally, it is not Defendant that has a fundamental misunderstanding of this case, but rather Plaintiff.   Plaintiff claims that the accommodation she requested is a "flexible work schedule", which her deposition testimony demonstrates was dependant upon her ability to commute to and from work.   Plaintiff testified that she "wouldn't be able to drive until the fog cleared" or until the "snow stopped" or when the "sun was going to set."   Plaintiff's Dep. at 104-5.   Thus, Plaintiff's "flexible schedule" as really a request to accommodate her inability to commute to work.   As set forth in Defendant's Motion for Summary Judgment, Defendant was not required to provide such an accommodation as a matter of law.   Laresca v. American Telephone & Telegraph, 161 F. Supp. 2d 323, 331 (D. N. J. 2001) (citing Bull v. Coyner, No. 98 C 7583, 2000 WL 224807 (N.D. Ill. Feb. 23, 2000) (finding that commuting to and from work is not part of the work environment that an employer is required to reasonably accommodate.); Salmon v. Dade Cty. Sch. Brd., 4 F. Supp. 2d 1157 (S.D. Fla. 1998) ("[the ADA] did not require an employer to 'eliminate those barriers which exist outside the workplace'" (emphasis in original)).

The bottom line is that the only way for Plaintiff to perform the functions of the Co-Manager position was to re-define that position by eliminating its essential functions. As a matter of law, this is not a reasonable accommodation and Defendant therefore is entitled to judgment in its favor.

### C.     Defendant Engaged In The Interactive Process With Plaintiff.

Plaintiff's argument that Defendant allegedly failed to engage in the interactive process does not preclude summary judgment. First, the record does not "establish that Defendant made absolutely no effort to work with Plaintiff to find "appropriate reasonable accommodations". Opposition at 25. As the testimony of Ms. Hinkle demonstrates, Defendant worked with Plaintiff in understanding her accommodations and Defendant, in fact, ultimately provided those accommodations. Hinkle Dep. at 32-40.

Second, regardless of whether there is an issue of fact as to whether Defendant engaged in the interactive process, Defendant was not legally obligated to do so, despite Plaintiff's contentions to the contrary. Opposition at 24-5. Plaintiff's argument ignores a critical fact – "the interactive process is triggered only if the employee is '*qualified*,' . . . ." See Simmerman, No. CIV. A. 94-6906, 1996 WL 131948 at *10 (emphasis added). When an employee is not qualified to perform the essential functions of the job, the employer has no obligation to engage in the interactive process. Id. Courts have routinely rejected the very argument that Plaintiff presents here. See, White v. York Intern. Corp., 45 F. 3d 35 (10th Cir. 1995) (finding that the interactive process is a recommendation and not a statutory requirement); Chiari v. City of League City, 920 F.2d 311, 318 (5th Cir. Cir. 1991); Cheatwood v. Roanoke Indus., 891 F. Supp. 1528 (N.D. Ala. 1995).

Simmerman, in fact, is analogous to this case and compels summary judgment in Defendant's favor. In Simmerman, the plaintiff claims that his employer had violated the ADA by failing to accommodate him by not reinstating in to his General Manager position following a leave of absence. As in this case, the issue was whether the plaintiff could perform the essential functions of the General Manager position, which included working a minimum of 50 hours a week and having the flexibility to work at night. Plaintiff's restrictions, however, included: (1) only working 40 hours a week and (2) only working the day shift. The court determined that because the plaintiff could not perform the essential functions of the General Manager position, the employer did not violate the ADA as it had no obligation to modify the essential functions of the General Manager position to accommodate plaintiff or to engage in the interactive process with plaintiff to discern an accommodation for him.

This is the exact situation present here. Plaintiff's restrictions prevent her from working a minimum of 40 hours a week and having the flexibility to work at night or as scheduled – all of which are indisputably essential functions of the Co-Manager position. As such, Defendant had no obligation to modify the Co-Manager position to accommodate Plaintiff or to engage in the interactive process (which it nonetheless did).

Finally, the Opposition brazenly suggests that Defendant failed to properly respond Plaintiff's request for accommodations because it did not contact her physician to discuss Plaintiff's condition. See Opposition at 26. This disingenuous argument misconstrues the undisputed facts and ignores binding law. The physician's letter referred to in the Opposition was submitted following Plaintiff's first request for FMLA leave. See Opposition at 10, ¶¶ 24-25.

In the FMLA context, an employer "may not request additional information from the employee's health care provider." *See* 29 C.F.R. § 825.307(a). Accordingly, it is disingenuous for Plaintiff to use Defendant's failure to contact her physician as evidence of unlawful motivation.

## V. PLAINTIFF HAS NO EVIDENCE OF PRETEXT

Plaintiff's reliance on alleged discovery abuses is misplaced and should be rejected. First, and foremost, as set forth in Defendant's oppositions to the motions to compel, Defendant has fully complied with the discovery rules in responding to Plaintiff's discovery requests. Second, if Plaintiff believed that additional discovery would be helpful to her case, she should have sought an extension under Rule 56. Since no such motion has been filed, these discovery issues are moot for purposes of summary judgment.

## VI. CONCLUSION

Based on the above-cited arguments and authorities, judgment should be entered in favor of Express on Plaintiff's Complaint in its entirety.

Respectfully Submitted,

By:     */s/ Sheldon K. Rennie (#3772)*
        Francis G.X. Pileggi, Esquire (#2624)
        Sheldon K. Rennie, Esquire (#3772)
        **FOX ROTHCHILD LLP**
        Citizens Bank Center, Suite 1300
        919 North Market Street, P.O. Box 2323
        Wilmington, Delaware 19899-2323
        (302) 654-7444 (Tel)
        (302) 656-8920 (Fax)
        E-MAIL: fpileggi@foxrothschild.com
        E-MAIL: srennie@foxrothschild.com

-and-

DAVID A. CAMPBELL (#0066494)
*Admitted pro hac vice*
LORI L. FAUVIE (#0076831)
*Admitted pro hac vice*
Vorys, Sater, Seymour and Pease LLP
2100 One Cleveland Center
1375 East Ninth Street
Cleveland, Ohio  44114
(216) 479-6100 (Tel)
(216) 479-6060 (Fax)
dacampbell@vssp.com; llfauvie@vssp.com
*Attorneys for Defendant*

Dated:  June 6, 2007